1

```
1                 UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK
2
    - - - - - - - - - - - - - - - X
3
    UNITED STATES OF AMERICA     :    05-CR-060
4
        -against-                     U.S. Courthouse
5                                :
                                      Brooklyn, New York
6   MICHAEL MANCUSO
    ANTHONY INDELICATO
7   ANTHONY DONATO
    ANTHONY AIELLO
8
                    Defendants    :
9                                      July 17, 2008
    - - - - - - - - - - - - - - - X    2:00 p.m.
10

11  BEFORE:
                HONORABLE NICHOLAS G. GARAUFIS
12              United States District Judge

13

14  APPEARANCES:

15  For the Government:      BENTON J. CAMPBELL, ESQUIRE
                            United States Attorney
16                          271 Cadman Plaza East
                            Brooklyn, New York 11201
17                          BY:  JEFFREY GOLDBERG
                                 TARYN A. MERKL
18                               Assistant U.S. Attorney

19

20  For the Defendant:      DAVID I. SCHOEN
    Michael Mancuso         JOHN MITCHELL
21                          2800 Zelda Road
                            Suite 100-6
22                          Montgomery, Alabama 36106

23

24

25
```

2

1    For the Defendant:        SHEEHAN & REEVE
     Anthony Indelicato        139 Orange Street
2                              Suite 301
                               New Haven, Connecticut 06510
3                              BY:  RICHARD A. REEVE

4

5    For the Defendant:        SERCARZ & RIOPELLE, LLP
     Anthony Donato            152 West 57th Street
6                              New York, New York 10019
                               BY:  MAURICE H. SERCARZ
7

8

9    For the Defendant:        SUSAN G. KELLMAN
     Anthony Aiello            25 Eighth Avenue
10                             Brooklyn, New York 11217

11

12

     Court Reporter:           RONALD E. TOLKIN, RMR
13                             Official Court Reporter
                               225 Cadman Plaza East
14                             Brooklyn, New York 11201

15

16          Minutes Taken Stenographically.  Transcript Produced
     By Computer Aided Transcription.

17                             ***

18

19

20

21

22

23

24

25

1              (Time noted:  2:18 p.m.)

2              THE CLERK:  United States of America against

3    Michael Mancuso, Anthony Indelicato, Anthony Donato, and

4    Anthony Aiello.  Docket Number 05-CR-060.

5              THE COURT:  Please be seated.

6              THE CLERK:  Counsel, please state your appearances

7    for the record.

8              MR. GOLDBERG:  Jeffrey Goldberg and Taryn Merkl for

9    the Government.

10             Good afternoon, Your Honor.

11             MS. MERKL:  Good afternoon.

12             THE COURT:  Good afternoon.

13             MR. MANCUSO:  Good afternoon, Your Honor.

14             THE COURT:  Mr. Mancuso.  Good afternoon,

15   Mr. Mancuso.

16             MR. SCHOEN:  David Schoen and John Mitchell for

17   Mr. Mancuso.

18             THE COURT:  Good afternoon.

19             Mr. Indelicato.

20             MR. INDELICATO:  Good afternoon, Your Honor.

21             THE COURT:  Good afternoon, sir.

22             MR. REEVE:  Richard Reeve on behalf of

23   Mr. Indelicato.

24             Good afternoon.

25             THE COURT:  Good afternoon.

1          Mr. Donato.

2          MR. DONATO:  Good afternoon, Your Honor.

3          THE COURT:  Good afternoon, Mr. Donato.

4          MR. SERCARZ:  Maurice Sercarz for the defendant,

5     Mr. Donato.

6          Good afternoon.

7          THE COURT:  Good afternoon.

8          And for Mr. Aiello.

9          MR. AIELLO:  Good afternoon, Your Honor.

10          THE COURT:  Good afternoon, Mr. Aiello.

11          MS. KELLMAN:  Good afternoon, Your Honor.

12          Susan Kellman appearing for Anthony Aiello.

13          THE COURT:  All right.  Very well.

14          Before we start with the -- with oral argument on

15     the -- on the motions, I just have one bit of news for those

16     who practice regularly before the court.  Judge Matsumoto was

17     confirmed this afternoon as a United States District Judge.

18          So, let's get started.  Who's --

19          Yes, Mr. Schoen.

20          MR. SCHOEN:  I just did this to try to make things

21     a little easier.  We sort of agreed on an order among

22     ourselves.

23          THE COURT:  Well, tell me what order that is that

24     you have agreed to among yourselves.

25          MR. SCHOEN:  If it meets the Court's approval,

1   Your Honor.

2           First Mr. Sercarz is going to discuss the motions,

3   that caveat that Mr. Donato, if -- we all have, I suppose,

4   joining in all clauses and all of the motions.  We've all

5   joined in all the motions.  Mr. Sercarz will start off.  The

6   Government will respond to that, and then Mr. Reeve was going

7   to go next and then Mr. Mitchell and then I was going to go.

8           THE COURT:  All right.

9           MR. SCHOEN:  And then I guess they would discuss the

10  anonymous jury again.  We didn't really discuss this at all,

11  but well, whatever you think.  That is the Government's

12  motion.

13          THE COURT:  I have seen everything that you have

14  submitted; so --

15          MR. SCHOEN:  Yes.

16          THE COURT:  -- hopefully you will provide an

17  epiphany application of your positions so that we can move

18  with some efficiency.

19          MR. SCHOEN:  Yes, Your Honor.

20          THE COURT:  So why don't we start with Mr. Sercarz.

21          Sir, come on up.

22          MR. SERCARZ:  Thank you, Your Honor.

23          You will be happy to hear that I don't intend to be

24  up here for too long, Your Honor.

25          I've got two motions that I briefed and that I want

1    to discuss briefly with the Court.  The first is the motion to

2    dismiss that I made in connection with the count of murder in

3    aid of racketeering, Mr. Donato's counts.

4             And I must say as an officer of the court, that I'm

5    aware that the Court has already ruled in the context of

6    Mr. Basciano's motion for a new trial, that the Santoro

7    homicide qualifies as a Racketeering Act, and that that -- the

8    logic of that decision would foreclose the argument that I am

9    making.

10            I also note and take account of the arguments in

11   Mr. Goldberg's papers to the effect that my motion may be

12   premature.

13            Nevertheless, Your Honor, we are aware of the

14   evidence as to the Santoro homicide because the Court has

15   heard it in two separate trials.  We are aware regarding

16   a motive that was ascribed for this homicide.  And

17   notwithstanding the arguments that the Government has made

18   in its responsive papers, I would respectfully submit that

19   if Mr. Basciano's motive in having this murder committed --

20   and that is the Government's theory of the case -- is to

21   preempt the kidnapping of his child, that under those

22   circumstances the defendant cannot be guilty of murder in aid

23   of racketeering.

24            And I am aware of the Government's argument that

25   in order to commit this homicide he sought the aid of the

1    Genovese crime family and that people went along in assisting

2    in this homicide because Mr. Basciano was -- and I think I'm

3    quoting from Mr. Goldberg's papers -- a trusted Lieutenant of

4    the -- a trusted soldier, rather, in the Bonanno family.

5            Nevertheless, not every -- with all due respect, not

6    every private vendetta in which members of organized crime are

7    enlisted qualifies as murder in aid of racketeering.  The

8    purpose of the act of violence, the violence or the murder,

9    has to be related to the conduct of the enterprise, I would

10   respectfully submit, in the same way that predicate acts must

11   be related.

12           And in this case what you have, not to use a glib

13   phrase, is the use of racketeering in aid of a murder, not

14   murder in aid of racketeering.  I don't think that the

15   Government in the two prior trials of Mr. Basciano advanced

16   a coherent theory as to why this murder benefited the Bonanno

17   crime family or benefited the members of the Bonanno crime

18   family, which would permit support for this count in the

19   context of this indictment against my client.

20           And I recognize that we haven't even discussed the

21   issue of the possible motive that my client may have had, and

22   for his benefit and the benefit of the other defendants, I

23   must presume that the Government can prove involvement for the

24   purpose of this application.

25           But even leaving aside questions of the motive of

1    alleged participants, if the act itself is not for the purpose

2    of racketeering, I respectfully submit that the charges cannot

3    be made and this Court knows enough to know that this count

4    cannot be sustained even though the language of the count

5    tracks the indictment.

6            That is all I have to say on that subject.

7            THE COURT:  Thank you.

8            MR. SERCARZ:  But with regard to the -- the second

9    item that I briefed, which is the need to have a statement

10   that conforms to the criminal procedure law regarding the

11   Government's proffered expert witness, Mr. Carillo.  I

12   understand that the Government has furnished us with

13   transcripts; that there are others that are publicly available

14   to us.  I don't think that that qualifies, under the Federal

15   Rules, as a suitable substitute because we still don't know

16   exactly what it is that he intends to say at this trial.  Much

17   of it may be objectionable, and the only way to get proper

18   rulings on that is to know in advance.

19           Now, the Government in its papers has limited the

20   scope of Agent Carillo's testimony at our trial.  And I note

21   that it is at Page 36 and 37 of the Government's moving papers

22   they describe that -- and I don't need to quote it all for the

23   record, but they set limits on the testimony they intend to

24   elicit from Agent Carillo.  Again, not with as much

25   specificity as I would request, not with as much specificity

1   as is required by the motion -- by the rules, but we are

2   getting closer.

3            Here is what I would propose, Your Honor.  Given

4   that we have this limitation, and given that we do have the

5   transcripts, and given that the Court has already indicated

6   that there's going to be a second round of motion papers in

7   this case, what I propose is that using this as a limit and

8   reviewing the transcripts of Carillo's testimony in the

9   Basciano trial that at the time that the new motions are due,

10  we make a motion in limine specifically seeking to limit

11  Agent Carillo's expert testimony in any way that we feel is

12  inappropriate.  And in that way we are arguing about things

13  that are concrete rather than wasting the Court's time with

14  theoretical arguments that the Court may not need to deal

15  with.

16           That is it from me.

17           THE COURT:  Thank you.

18           Mr. Goldberg.

19           MR. GOLDBERG:  Ms. Merkl will be arguing these

20  points.

21           MR. REEVE:  May I just make a suggestion, which is

22  I filed the motion to dismiss.  I have a few brief comments.

23  It is very related to the motion to dismiss on behalf of

24  Mr. Donato.  It might make sense for me to just address

25  that --

1           THE COURT:  That's fine.

2           MR. REEVE:  -- and then the Government can address

3     it collectively.

4           THE COURT:  That is fine.

5           MR. REEVE:  Thank you.

6           And I want to just clarify the record because the

7     situation is different now than it was when the motion to

8     dismiss was filed.  There is now a new indictment.  It's S-9.

9           THE COURT:  Yes.  I'm going to get to that as to --

10    there may be an S-10.

11          Will there be an S-10.

12          MR. GOLDBERG:  There may be, Judge.  Yes.

13          THE COURT:  Well, does S-9 contain everything that

14    it is supposed to?

15          MR. GOLDBERG:  Yes.

16          THE COURT:  In other words, that you intended to.

17          MR. GOLDBERG:  It does.  There was an item that was

18    accidentally deleted from S-9 when we sought S-9.  It is in

19    S-8.  It is the Anthony Aiello gambling charge.  That will be

20    added, put back in through S-10.  But no other changes.

21          THE COURT:  All right.  So S-9 contains everything

22    except that one item that's in S-8 that was left out of S-9.

23          MR. GOLDBERG:  Yes.  If I could just briefly

24    summarize the difference between S-8 and S-9.

25          THE COURT:  Yes.  Why don't you do that.  That might

1  help.

2          MR. REEVE:  That was what I was just going to

3  address.  But I'll -- I'll defer.  It relates to my motion.

4          THE COURT:  Well, he may answer some question that

5  you have by telling us what is going on with S-9.

6          MR. GOLDBERG:  Right.

7          You saw the letter, and I am happy to summarize.

8          The additional -- an additional predicate act

9  against the Defendant Indelicato, a marijuana charge.  There

10 were two predicate acts dropped as to Defendant Aiello.  There

11 was an additional Racketeering Act against Aiello that was

12 dropped.  I just mentioned that; that was dropped

13 inadvertently.  That will be put back.  The date of the

14 Pizzolo murder was changed by a day.  It wasn't the day that

15 the body was found but the day that the murder actually was

16 committed.

17         I think that is it.

18         THE COURT:  Okay.

19         MR. REEVE:  And Your Honor, it was in reference to

20 the first change that I think obviously impact on the motion

21 that I filed.  Namely, at the time of S-8 in the filing of the

22 motion, Mr. Indelicato was charged with Racketeering Act 2,

23 which is the Santoro murder; and then Racketeering Act

24 Number 4, which relates to the conspiracy to murder of

25 Mr. DeFilippo.  There is now a Racketeering Act Number 9 which

1  names Mr. Indelicato with a marijuana conspiracy.

2          And so even if the Court were to accept, at this

3  or some other time in the case, my arguments with respect to

4  Racketeering Act Number 2, obviously that would not warrant

5  dismissal given the third racketeering act that is alleged.

6  It would not warrant dismissal of Count 1, which is what

7  my motion says, and it has now been obviously outdated by

8  that change in the indictment.

9          However --

10          THE COURT:  I see.

11          MR. REEVE:  -- and -- and like Mr. Sercarz, I think,

12  and I do need to note that the Court -- and I believe it was

13  in two rulings in Basciano.  There was a ruling on pretrial

14  motions in the Basciano case.  It was January 3rd of 2006 --

15          I am sorry, Your Honor.  I don't have the docket

16  number in front of me.

17          -- in which the Court ruled that the claim on the

18  Santoro murder in the context of a pretrial motion was

19  premature, and I think that obviously is relevant to the claim

20  that I am making now.

21          In addition, based on the evidence at that first

22  Basciano trial -- and I do have the docket number for this

23  ruling.  It was Docket Number 660 -- it was decided on or

24  about December 21st of 2006.

25          And Your Honor denied Mr. Basciano's motion for

1  judgment of acquittal on the Santoro murder.  The claim there

2  that was made was it was not sufficiently related to the

3  enterprise on both horizontal and vertical grounds, and Your

4  Honor denied that claim.  And so obviously those -- those

5  rulings are relevant to the issues that are raised here.

6           I think that the claim that I have made, which to my

7  knowledge has really not been squarely addressed by the

8  Court -- and I could be wrong about this -- is the specific

9  language in Paragraph 9 of S-9, and that is the language which

10 after the Government gets through all the -- what I would

11 refer to as more ordinary allegations with respect to

12 enterprise activities.

13          They then go on to say from time to time members of

14 this enterprise committed acts of violence.  And I believe the

15 language is "to solve personal grievances and vendettas."

16          I don't believe, Your Honor, that that language

17 squares with the case law that has been cited, frankly, by

18 both parties.  I don't think that it -- it squares with the

19 language of the Second Circuit in *Bruno*, which is a case

20 relied on by the Government and that the Court has alluded to.

21 I think that it goes so -- it makes it so broad that it

22 almost -- to the degree it is inconsistent with *Bruno*, I don't

23 think it should be in the indictment in that form because I

24 think it misleads the jury.  It is going to be inconsistent,

25 I think, with the instructions that Your Honor is going to

1  give because I don't think that a murder that is committed to

2  satisfy a personal vendetta or a grievance is, in fact, part

3  of the enterprise.  And that's -- I don't want to get into the

4  facts of *Bruno*.  Your Honor distinguish the facts of *Bruno* in

5  the Basciano ruling.

6           But just as a matter -- is that language proper in

7  a RICO indictment?  I think that is a more narrow issue that

8  is ripe at this time before the Court.  And -- and I -- and

9  I would ask Your Honor to take a look at that -- at that

10  issue.

11           I understand the Court's rulings in the past that

12  there is a need for a full evidentiary record on this issue

13  typically, and -- and frankly, part of my motion that I filed

14  was for purposes of preserving issues that have already been

15  decided adversely to me by the Second Circuit.  And I am not

16  going to suggest that Your Honor has a basis to look at that

17  issue at this time.

18           I -- the only other motion that I filed that I would

19  reference at this time is I did file a motion for additional

20  peremptory challenges.

21           THE COURT:  I have it.

22           MR. REEVE:  Frankly, I think -- and obviously

23  I don't want to presume what the Court might want to do,

24  but it's always been my experience that the exercise of

25  peremptories is not the part of jury selection which takes

1    an inordinate amount of time.  If Your Honor wanted to defer

2    that until we see how many jurors we actually have that are

3    not either out by agreement, stricken by cause, we then have a

4    pool and we can make that determination.  The Government says,

5    "Well, there is really no basis."

6              I think the reality here is we have four defendants

7    who are charged with life -- potential life imprisonment

8    without parole.  There are likely to be inconsistent defenses

9    in various permutations.  And I -- and I think that it's

10   appropriate.  It's obviously a discretionary decision by Your

11   Honor.  I think the parties agree.  Whether or not Your Honor

12   has to decide that right now I defer to the Court on that.

13             Thank you.

14             THE COURT:  All right.  Thank you very much.

15             Mr. Goldberg.

16             MR. GOLDBERG:  Very briefly, Judge, on the matter of

17   the peremptories, and then I will turn it over to Ms. Merkl to

18   handle those other arguments.

19             We rely on our papers on the request for additional

20   peremptories, but I would note that I think it would be

21   something Your Honor would need to decide before we bring in

22   the pool because it might require a larger pool.

23             That's all.

24             THE COURT:  How many do you think I need to bring in

25   under the current circumstance?

1          MR. GOLDBERG:  Based on what we have done in prior

2     trials, I would say at least 300.

3          THE COURT:  Anybody have a different number?

4          Okay.  Ms. Merkl.

5          MS. MERKL:  Thank you, Your Honor.

6          Good afternoon.

7          THE COURT:  Good afternoon.

8          MS. MERKL:  Starting first with the motions to

9     dismiss, Your Honor, as to both the motion made by

10    Mr. Indelicato and the motion made by Mr. Donato, the

11    Government's position is that the motions are premature.  They

12    both touched on evidentiary sufficiency as to the allegations

13    contained in the indictment, and it would be inappropriate

14    for -- that Your Honor to consider the sufficiency of the

15    evidence at this stage.

16         THE COURT:  Well, assuming that the -- that it

17    is proven or it could be proven that a murder took place to

18    solve personal grievances and vendettas, the language that's

19    just been recalled here, how could that be part of a

20    RICO count --

21         MS. MERKL:  Well, Your Honor, will respect to

22    that --

23         THE COURT:  -- as opposed to just a simple,

24    straightforward conspiracy to murder or -- or some other

25    form of murder that might not even be a federal case?

1          MS. MERKL:  If the evidence, in fact, showed that

2     there was no relatedness to the affairs of the enterprise, it

3     would be properly dismissed at the end of the presentation of

4     the evidence.

5          However, as the Second Circuit held -- has held in

6     numerous cases, including the *Ty* case, relatedness can be

7     proven by establishing either the commission of a particular

8     racketeering act related to the activities of the enterprise

9     or that the defendant was able to commit the particular act

10    due to their position within the enterprise.  And it is on

11    this latter prong that we rest the argument that use of

12    resources of the enterprise is sufficient to establish

13    relatedness, both vertically and horizontally under RICO.

14          THE COURT:  Do you believe you will be able to

15    demonstrate that in presenting the case?

16          MS. MERKL:  Absolutely.

17          And I would note that as both defense counsel

18    conceded that Your Honor has already found such findings with

19    respect to the Santoro murder in the context of the Basciano

20    trial.

21          So with respect to the --

22          THE COURT:  That was always with respect to

23    Mr. Basciano.

24          MS. MERKL:  Absolutely, Judge.

25          But with respect to the --

1          THE COURT:  And there may have been -- may be a

2    greater nexus of relationship of the murder to the activities

3    of the enterprise, if they exist at all.  If you are dealing

4    with someone who is either that way, who is a principal in

5    the enterprise, as opposed to someone who is brought in,

6    you know, on a pretense -- on a -- based upon an explanation

7    that my son -- you know, this guy is trying to kill my kid; so

8    I've got to deal with him.

9          MS. MERKL:  There -- there is an argument to be made

10   in that regard but I think the flip argument -- the flip slide

11   of the argument can also be made, which is that Mr. Basciano's

12   motive, assuming just arguendo that it was personal in nature,

13   could be ascribed as a personal motivation, a personal thing;

14   however, with respect to the -- his cohorts within the family

15   or within the enterprise, what is their motivation?  And that

16   is really a question for the jury.

17          If their motivation was to please Mr. Basciano or to

18   enhance the relationship with Basciano or to prove themselves

19   to other members of the family by assisting Basciano with

20   crimes of violence, all of which are fact questions, that

21   determination needs to be left to the jury.

22          So, with respect to this -- Mr. Indelicato's motion

23   I won't belabor the point further, and, you know, just you

24   know, rely on a motion.

25          But there is one comment Mr. Sercarz has mentioned

1    that I wanted to address.

2         And he recommends that -- that this is, you know,

3    racketeering in aid of murder and not murder in aid of

4    racketeering.  And I think that places undue reliance on this

5    sort of colloquial title of this statute.  The purpose that

6    the Government needs to prove here is not -- you know, under

7    1959, just to be clear, not speaking out the RICO Count, but

8    if Mr. Donato motions to dismiss Counts 6 through 8, the

9    Government has to prove that the defendant's purpose, or one

10   of their purposes was for gaining entrance to or maintain or

11   increasing a position in an enterprise engaged in racketeering

12   activities.

13        And Mr. Sercarz's argument seems to conflate the

14   notions of relatedness for RICO purposes and the expressed

15   intent requirement set forth in 1959.  And the Government

16   fully expects to establish at trial that Mr. Donato and

17   Mr. Indelicato both were motivated by their desire to assist

18   Mr. Basciano, an individual who was of stature and of growing

19   importance within the Bonanno family and also to, in

20   Mr. Donato's, case assist in his own entry into the family.

21        Turning now, unless Your Honor has further questions

22   on the motions to dismiss, to the arguments made as to the

23   expert disclosures pertaining to John Carillo, the Government

24   has no objection to the defendant's seeking to file a tailored

25   motion in limine.  As the Government has set forth in our

U.S.A. v. MICHAEL MANCUSO, ET AL.                    20

1   papers and has -- as we've have done in prior trials,

2   Carillo's expected testimony will be focused on explaining

3   the history, general structure, and methods of the La Cosa

4   Nostra family and the particular history of the Bonanno family

5   and the identity and rank of various individuals within the

6   family and, you know, that we expect to have it be limited and

7   we have no objection to, you know, their filing a motion and

8   we will respond appropriately at that time.

9           THE COURT:  All right.  That seems reasonable

10  enough.  Everyone is in agreement.  And it means that when we

11  file we will have a more focused motion and we can have a

12  discussion at that point.  So I will hold off on -- on --

13  I take it the -- in effect the motion -- that motion is

14  withdrawn and will be renewed in -- in a more definitive

15  detailed way closer to the trial.

16          Is that basically it, Mr. Sercarz?

17          MR. SERCARZ:  Yes.

18          THE COURT:  That's fine.

19          MS. MERKL:  I'll turn it back over to defense

20  counsel, Your Honor.

21          THE COURT:  Okay.  Very good.

22          Mr. Mitchell.

23          MR. MITCHELL:  Good afternoon, Judge.

24          THE COURT:  Good afternoon to you.

25          MR. MITCHELL:  If the Court please, I would like to

1   discuss for a moment the motion that was made on behalf of

2   Mr. Mancuso seeking severance under Rule 8(a) and 8(b) as an

3   initial observation.

4          THE COURT:  Is there any case law that -- in this

5   Circuit that would require it?

6          MR. MITCHELL:  That would require the severance?

7          THE COURT:  Yes.

8          MR. MITCHELL:  Well, I think so, Your Honor.

9          THE COURT:  And what statute?

10         MR. MITCHELL:  Well, 8(b) -- as I was going to say

11  as an introductory remark, we have challenged both the

12  severance on the basis of the counts and on the defendants,

13  and it appears to be the position of the Second Circuit that

14  the test that is established under 8(b) is the one that

15  applies in -- in these mixed circumstances.

16         Under 8(b), which is a statute that requires

17  severance as a matter of law, the Government at some points in

18  their memorandum argues about relative prejudice.  But the

19  issue here is whether or not the counts are properly joined

20  and the defendants are properly joined as a matter of law.

21         If Your Honor looks at the -- at the indictment, the

22  test that has to be applied is whether or not the three counts

23  that Mr. Mancuso is charged in -- and the -- and the

24  indictment is somewhat unusual in the sense that the first two

25  counts, as -- as we typically see in RICO indictments, are

1  normally charged in 1962(c) substantive count and a 1962(d)

2  RICO conspiracy count.

3        In this case Mr. Mancuso is not charged in any

4  way in either Count 1 or Count 2.  He is not charged in

5  participating in either the substantive RICO count or the RICO

6  Conspiracy count, and, of course, he is not charged in any of

7  the predicate acts that are enumerated as part of the pattern.

8  He is charged only in three counts, Your Honor, and those are

9  the three counts:  Two 1959 counts, I think it's Counts 2 and

10 3; and then a count alleging the use of a weapon in connection

11 with a crime of violence.

12        If Your Honor applies the Rule 8(b) standard

13 which -- which is that in order for joinder to be proffered

14 there must be a finding that the acts that the defendant is

15 charged with were part of the same act or transaction or

16 series of acts or transactions that the other individuals

17 are charged with, I don't know how someone could reach that

18 conclusion because if you go on to examine the other counts

19 in the indictment -- as I said, he is not charged in Count 1

20 or 2.

21        If you go on and look at the other indictment,

22 there's another series of 1959 counts involving the alleged

23 murder of DeFilippo.  There is another allegation of murder

24 involving Santoro, none of which it's alleged that Mr. Mancuso

25 is criminally liable for or participated in any way.

1          And then the indictment goes on in counts -- I

2    think it's -- I am not sure what the number of the count is,

3    but there's an individual account that charges Mr. Aiello

4    alone with assault in aid of racketeering.

5          And then Counts 11 through 16 charged extortionate

6    extensions of credit by Mr. Aiello.  And then, finally, the

7    last count charged on Mr. Aiello -- and Mr. Basciano was

8    obviously already been severed with participating in a

9    gambling enterprise in violation of Section 1955.  It is hard

10   to imagine how it can be said that these completely unrelated

11   acts are somehow part of the same series of transactions.

12         The Government cites the *Savonne* case in support

13   of their contention that joinder is proper here.  But I think

14   they really ask too much.  In -- as an initial observation,

15   the Second Circuit observed in *Savonne* that the -- that the

16   connection was tenuous at best.  But more than that, they

17   allowed sever- -- or they allowed joinder there because they

18   found that the counts that Mr. Savonne was charged with was

19   really tied to the whole underlying thesis of the indictment,

20   which was labor racketeering.  You don't have that in this

21   case.

22         In fact, in a recent decision -- well, not so

23   recently.  But in a decision, *United States versus Selemy*

24   which is not cited in our brief -- but it's recorded at

25   152 F.3d 88 at 115; it was decided by the Second Circuit in

1   1998 -- they described the nature of the prejudice which

2   evolves in an instance where there is misjoinder under 8(b).

3   And what they say -- and I am quoting the decision now.

4           They say that prejudice occurs in joint trials when

5   proof inadmissible against the defendant becomes a part of the

6   trial solely due to the presence of codefendants as to whom

7   its admission is proper.  And that is precisely what Your

8   Honor is going to have -- is going to face in this case if

9   there is not severance.

10          Every time that there is a piece of testimony or a

11  document or some evidence offered with respect to any of these

12  other counts, including the RICO Counts, we're going to be

13  asking for limiting instructions.

14          THE COURT:  It happens all the time.

15          MR. MITCHELL:  Well, it may happen all of the time,

16  but -- but --

17          THE COURT:  Isn't there a connection in Counts 3

18  and 4 which have to do with Aiello and Mancuso's alleged

19  participation in the Pizzolo murder?  Why should they be

20  severed in that situation?

21          MR. MITCHELL:  Well, those counts can be together,

22  but -- but there's no --

23          THE COURT:  So you're saying that Mr. Aiello should

24  be -- should be tried twice?

25          MR. MITCHELL:  Well, I'm simply I -- I wouldn't put

1    it --

2            THE COURT:  In other words, once on the racketeering

3    counts and conspiracy, RICO, and then -- but then there should

4    be a separate trial as to the Pizzolo murder as for -- because

5    Mr. Mancuso and Mr. Aiello were together allegedly in

6    committing that.

7            MR. MITCHELL:  Well --

8            THE COURT:  How would we do that?

9            MR. MITCHELL:  -- that might be the consequence.

10           What I'm here to do is to argue that Mr. Mancuso

11   should not sit through a trial.  I wish all of this highly

12   prejudicial proof is going to come out about issues and cases

13   and matters that he has nothing to do with.  I mean, that is

14   fundamentally what 8(b) is all about.  It's to prevent that

15   sort of prejudice If -- if he's -- if his crimes are not part

16   of the same active transaction; for example, what is the

17   relationship between the alleged Pizzolo murder and these

18   extortions in collections and credit, or gambling conspiracy

19   or an assault of someone?  There's absolutely no relationship

20   to those.

21           And as I say, I am not here to argue anything about

22   Mr. Aiello.  I am simply here to argue that my client, under

23   8(b) as matter of law, is entitled to a severance because

24   there is no basis to join those counts with the -- with the

25   other counts.  They are simply not part of the same act or

1    transaction.

2            And I would simply, perhaps, wind up my argument

3    by -- by bringing to the Court's attention -- it's a matter --

4    it's a case that's cited in our brief for a southern district

5    decision by Judge Cedarbaum where the Government argued that

6    the membership of the various individuals in the same

7    enterprise was sufficient glue to satisfy the 8(b)

8    requirements.  And the Court wrote that on the face of the

9    indictment the only common thread between the two sets of

10   defendants is that both are charged with criminal conduct

11   allegedly committed in connection with the almighty Latin

12   King/Queen nation, the Latin Kings.

13           This connection does not transform the disparate

14   criminal conduct into the same act or transaction or series of

15   acts or transactions.  If this connection were sufficient to

16   meet Rule 8(b) standard, all members of Latin Kings who

17   committed crimes could be joined in a single indictment.

18           As I said, Your Honor, the -- the analysis proceeds

19   not from what the Government suggests that it may prove, but

20   from the face of the indictment.  And looking at the face of

21   the indictment, I don't believe that anywhere there is a basis

22   to argue that these disparate criminal acts committed by other

23   people with which my client is not charged or linked in any

24   way could possibly be deemed to be part of the same series of

25   acts or transactions.

1          Thank you, Judge.

2          THE COURT:  Thank you, Mr. Mitchell.

3          Anyone else on that?

4          MR. SCHOEN:  Your Honor, these issues are just so

5    different.  I thought that maybe --

6          MS. MERKL:  Is there a problem?

7          Your Honor, what's your --

8          THE COURT:  Is there really such a thin connection

9    that we really should be -- we should be trying this case in

10   two parts, one for Mr. Mancuso and the other one for everybody

11   else?

12         MS. MERKL:  The Government generally doesn't think

13   so, Your Honor.  And we would note that as an element of the

14   1959 charges that Mr. Mancuso was charged in, the Government

15   is required to prove the existence of the enterprise and the

16   impact on commerce that the enterprise has.

17          And in that regard, the evidence that will be

18   admitted at trial -- we anticipate presenting at trial for

19   Your Honor's determination as to admission will prove the

20   relatedness of the various predicate acts alleged in the

21   racketeering counts to establish the existence of the Bonanno

22   family and that evidence would be admissible in a separate

23   trial because the Government has the burden of proof as to the

24   enterprise and that enterprise's impact on commerce as part

25   of the 1959 counts in which Mancuso is tried -- charged.

1    Excuse me.

2            So in that regard, the Government feels that there's

3    no basis for severances.

4            And we would note that Mr. Mitchell failed to

5    address the Second Circuit's analysis in *Savonne* and Judge

6    Sifton's analysis in *Rostelli* which is right on point,

7    which -- in which -- in the *Rostelli* case Judge Sifton

8    concluded that when predicate acts are included in a

9    racketeering count and it's -- or properly indicted as part of

10   a pattern for purposes of racketeering, Rule 8(b) cannot

11   require a closer relationship to establish that these events

12   are connected as a series of actual transactions for the

13   purposes of Rule 8.

14           And we, you know, rest on our papers but certainly

15   urge the Court to deny Mancuso's motion for severance.

16           THE COURT:  Thank you.

17           MR. MITCHELL:  Judge, may I just respond briefly?

18           THE COURT:  Of course.

19           MR. MITCHELL:  I don't understand the argument that

20   was just made.  He is not charged.

21           THE COURT:  It is not your job to understand it.

22   I have to understand it.

23           Go ahead.  I understand.  That's a term of art.

24           Please continue.

25           MR. MITCHELL:  Not very well put.

1          This is not a case where I am arguing that there is

2    disparate criminal contact -- conduct within the pattern of

3    racketeering activity.  He is not charged in the RICO count.

4    He is not charged with any racketeering act.  And the fact

5    that the Government has to prove the existence of the

6    enterprise, fine.  If you prove the existence of the Bonanno

7    family in order to prove the RICO count and you prove the

8    existence of the Bonanno family in order to prove the 1959

9    Count, it doesn't somehow relate that conduct, that is to say,

10   the purported murder of Pizzolo, to gambling activities or to

11   the collection of credit activities.

12          And that is the reason I cited Judge Cedarbaum's

13   decision.  I mean, the mere fact that they may be alleged to

14   be members of the same association is not sufficient glue to

15   hold it together.  And these arguments about predicate acts,

16   they have nothing to do with my client.  He is not charged in

17   the RICO counts.

18          And with respect to commerce, I mean the Government

19   has to prove a nexus of commerce in every federal case there

20   is.  And the fact that it is somehow related to commerce is

21   not sufficient glue to say that you could charge disparate

22   criminal conduct, which it may also somehow be related to

23   conducts, which I'm disinclined.

24          MS. MERKL:  Your Honor, we are certainly not relying

25   on the argument that the defendants are charged as being in

1   the same enterprise.  We are not relying on the alleged

2   membership of these defendants in the Bonanno family.  We are

3   relying on the fact that the substantive counts in

4   which Mancuso is charged are also charged as predicate acts

5   in the RICO count.

6            And on the face of the indictment -- and

7   Mr. Mitchell is correct, Your Honor, is to look at the face

8   of the indictment -- that fact that those substantive counts

9   are part of the pattern of racketeering activity alleged in

10  the RICO established that they are sufficiently related for

11  the purposes of their Rule 8.

12           We rest on our papers.

13           MR. MITCHELL:  Your Honor, they're not charged as

14  predicate acts.  I mean, if you look at the predicate acts,

15  I would like to see somebody show me Mr. Mancuso's name

16  because he's not charged in a single predicate act.

17           MS. MERKL:  I think Your Honor gets our point, which

18  it is the conduct charged as part of the predicate act, not

19  Mr. Mancuso's name.

20           MR. MITCHELL:  The point, Your Honor -- and I'm

21  sorry to belabor the point.

22           But understanding RICO, I could participate in a

23  predicate act with someone who was a racketeer, and I might

24  not be guilty of racketeering.  I could commit, for example,

25  one predicate act with someone, and I wouldn't be guilty of

1  racketeering.  And the fact that that person and I, the

2  racketeer, the person who was guilty of racketeering and me,

3  as codefendant who participated in the single act, that

4  doesn't join me with every other disparate predicate act that

5  exists in that pattern.

6            THE COURT:  But there is no obligation under any

7  case law that I know that there must be a -- an identicality

8  as to every act between the person who is only charged with

9  the -- with a crime as opposed to participation in the

10  racketeering conspiracy.

11            MR. MITCHELL:  Well, in other words, it would be --

12            THE COURT:  It would have to be -- you don't have to

13  have a complete overlay of all of the facts, even though your

14  client is not charged in the racketeering count and is only

15  charged with the substantive act of murder.

16            MR. MITCHELL:  Well -- well, all that I am saying is

17  that the fact that disparate acts can be included under the

18  umbrella of the pattern doesn't have any force with respect to

19  someone who is not charged with the racketeering and who may

20  or may not have been involved in one of the criminal acts that

21  gives rise to a predicate.  That doesn't glue him together now

22  for everything else in the indictment.

23            THE COURT:  Don't you have a much stronger argument

24  if your client is only charged with some minor -- relatively

25  minor crime having nothing to do with the major acts charged

1   in the racketeering counts as opposed to if the crime of

2   murder, which other people are charged with as part of a

3   racketeering conspiracy?

4             MR. MITCHELL:  I -- I -- personally, I don't think

5   the seriousness of the crime is the test.

6             The question is does that crime -- whatever it is,

7   however serious or less serious it is -- relate to the other

8   activities?  Is it part of the same act- -- or transaction or

9   series of transactions, such as the gambling or the extortion

10  extensions of credit or the assault of some other person that

11  he's got nothing to do with, and they are not claiming?

12            I mean, if, you know, they had charged him in the

13  RICO count that -- then we wouldn't be here arguing.  That --

14  there must be a reason why he is not charged in the

15  RICO count.  There must be a reason why the Government elected

16  not to say that he participated in those pattern of

17  racketeering activities.  There must be a reason for that, and

18  I think that supports our argument that by simply charging him

19  alone in three substantive crimes, you've got to relate those

20  substantive crimes through the -- to the other substantive

21  crimes and --

22            THE COURT:  I understand your point.

23            MS. MERKL:  Your Honor, do you have a question for

24  me?

25            THE COURT:  No.  I am wondering, you know, if --

1                MS. MERKL:  Well, Your Honor, I would --

2                THE COURT:  -- if you can --

3                MS. MERKL:  -- I would just note that with respect

4     to --

5                THE COURT:  -- add something that would enlighten

6     us.

7                MS. MERKL:  -- with respect to the argument as to,

8     you know, a disparate act being related to the racketeering

9     counts when somebody is not charged in the racketeering

10    counts, the Government will point to the *Savonne* case where

11    the Second Circuit squarely held that individuals can be

12    joined for will aid purposes, even when not part of the

13    substantive RICO.

14                And you know, the notion that this murder was not

15    related to the affairs of the Bonanno family and related as

16    a result to the remaining racketeering acts as charged in the

17    RICO is -- is just not credible, and it's not factually

18    accurate.

19                With regard to the absence of additional charges,

20    the Government would simply respond that the -- the Court is

21    to look at the face of the indictment, not to draw inferences

22    as to the absence of charges in determining whether there's

23    relatedness but to focus on the charges in the indictment as

24    returned by the Grand Jury.

25                MR. MITCHELL:  Two quick points, Your Honor.

1    *Savonne*.  The reason -- the reasoning in *Savonne*,

2  which I addressed in my initial presentation -- the reasoning

3  of *Savonne* is that the *Savonne* substantive count related to

4  the under- -- the entire underlying conduct that permeated the

5  indictment, which was laid to racketeering.  But the Court,

6  itself, made the observation that the connection was very

7  tenuous.

8          And with respect to looking at the indictment, I

9  agree with Government counsel.  There's nothing -- if you look

10  at the indictment, there's nothing that would let you point to

11  this or that paragraph and say, oh, well that's a -- that's a

12  basis to say that the -- the alleged gambling enterprise or

13  the alleged collection of extortion in credit transactions

14  somehow is part of the same active transaction of the Pizzolo

15  murder.

16          There is nothing like that.

17          THE COURT:  Thank you.

18          MR. MITCHELL:  Thank you.

19          MS. MERKL:  Your Honor, we have nothing further

20  unless you have something.

21          THE COURT:  All right.  Next issue.

22          MR. SCHOEN:  Judge, I'm hoping that -- that the

23  Court's familiarity with the tenets would rule that whoever

24  gets the ball to the net last wins the point, and I think we

25  got the last word in at that point.

1          THE COURT:  Yeah.

2          MR. SCHOEN:  Things that --

3          THE COURT:  I have actually never heard that

4    analogy, and I hope I never hear it again.

5          MR. SCHOEN:  Things had been so conciliatory before

6    Mr. Mitchell got up.  I am going to have to apologize for

7    calling his argument; that seems to have changed now.

8          Judge, I know that the Court has read all of the

9    papers.  I know you take the process seriously.  So I really

10   just want to cut to the chase.

11         I think has been a key issue -- not I think.  It has

12   been a key issue in this case, at least since last fall.  And

13   that is the -- what I call the discovery on the Cicale phony

14   murder plot.  That is really what I want to focus my attention

15   on today in my part of the argument.  In other words, we rely

16   on the papers, and, in fact, with that -- for that we rely on

17   the papers also but not exclusively.

18         Judge, I feel like we should step back to

19   February 14th of this year when we -- with different players,

20   and Mr. Buretta was standing here for the Government.  And we

21   made the point as strongly as we could that time was passing

22   quickly and that the time for the Cicale documents and

23   information regarding this phony murder plot to see the light

24   of day had long passed, but in any event, it was upon us.

25         And the Court agreed, and the Court said to the

1   Government at the time -- in effect, recalling its earlier

2   order granting the continuance of this protective order, the

3   Court said in that order in December of 2007, December 19th,

4   I believe, we are certain that the Government will conclude

5   its investigation and report the invest- -- it's investigation

6   of they matter to the Court and to defense counsel promptly.

7          And on that day, on February 14th when we would hear

8   Mr. Buretta's position, and the Government's position

9   continues to be in the papers and in response to the papers,

10  and Mr. Basciano's case is, well, we have given them all that

11  we need to give them.

12         And the Court told the Government something like --

13  on February 14th something like, well, do more than that and

14  do better than that because the Court took its responsibility

15  very seriously.

16         Since February 14th, with respect to this Cicale

17  phony murder plot issue, we haven't even gotten as much as the

18  collective sweat off of the Government's brow with respect to

19  this issue.  We have nothing still.  We have no witness

20  identities that we sought consistently and repeatedly since

21  this issue first surfaced, and I would remind the Court it

22  only surfaced to us by happenstance, frankly, which, again,

23  the Court took seriously and took action to try to remedy

24  after we pointed out to the Court how we had been prejudiced

25  by the -- I will call it the concealment, but the filing under

1   seal of certain documents.

2          So the Court left nothing to chance about that

3   anymore.  And the Court entered an order that said, I don't

4   want anything filed under seal regarding this issue anymore.

5          That didn't have the intended impact because the

6   Government has continued to file documents under seal with

7   respect to that issue.

8          I mean, I have cut ahead in this argument to point

9   out to the Court, as I do in the motion -- as we do in the

10  motion papers.  The very real danger of that is a practical

11  and a very important Constitutional one; that is -- and I say

12  that -- the continued filing under seal of documents, this

13  Court spoke to that directly in Mr. Basciano's case and told

14  the Government the Court simply would not have that anymore

15  because it puts the Court in an untenable position.

16         As we say in our motion papers here and in the rely

17  again, by asking the Court to deny us further discovery and to

18  suggest that the -- and to conclude that the Government has

19  fulfilled its disclosure obligations based on sealed documents

20  puts the Court in the position that the Government stood in

21  with respect to its *Napue*, N-a-p-u-e, obligations, the

22  obligations under *Wallach*.

23         And those obligations, of course, as the Court

24  knows, are to not permit any witness to testify falsely on the

25  stand.  And in this case and in any case which there is reason

1   to believe that could be a circumstance, to prevent ahead of

2   time that witness from testifying falsely.

3            The Government's conduct with respect to the sealed

4   documents has put the Court in the position because the Court

5   has an independent obligation, of course, to maintain and

6   insure the integrity of the process and of everything that

7   comes from the witness stand, especially from the Government's

8   side, the Court --

9            THE COURT:  Everybody's side.

10            MR. SCHOEN:  The Government has a special role in

11   this process.  It's the Government making the allegations.

12   And I know the Court wants to insure the integrity of that

13   process, but the Court can't possibly know the entire facts --

14   all of the facts in the case, the entire defense theory of the

15   case, the defense theory of cross-examination in the case, and

16   these are decisions that are going to be relevant at the very

17   time that the witness is testifying up there.

18            And so let's give a perspective on where we are on

19   the Cicale thing.  In my view, Mr. -- I use the vehicle of

20   Mr. Mancuso's case, first because he is our client; but,

21   secondly, it is because I think if we focus on him with

22   respect to Cicale and this information, I think it applies to

23   all of the defendants.  If we focus on him, it is most clear,

24   it seems to me, to crystallize the issue.

25            This is -- as to Mr. Mancuso, notwithstanding the

U.S.A. v. MICHAEL MANCUSO, ET AL.                          39

1   Government put in its responsive papers without any other

2   reference, this is a single-witness case as to Mr. Mancuso.

3   The case starts and stops with Cicale.

4          That certainly distinguishes the case, with all due

5   respect to them, from the Basciano case and the Court's post

6   trial motions order in the Basciano regarding this issue.  And

7   whether or not it distinguished it, even in that order the

8   Court appropriately invited pretrial motions on this issue,

9   understanding that that would put -- the defendant stands in a

10  different procedure and substantive posture at that point.

11         But it is a single-witness case.  I have said this

12  from the first day I appeared in this case.  I said it today.

13  I will always say it.

14         The case as to Mr. Mancuso starts and stops with a

15  claim by this Cicale about a conversation that naturally he

16  had alone with Mr. Mancuso.  And as the Court knows from have

17  heard testimony in the Basciano cases, Cicale, who had this

18  purported conversation with Mr. Mancuso hated Mr. Mancuso,

19  sought permission to kill Mr. Mancuso, set about plotting to

20  kill Mr. Mancuso, enlisted others to help him kill

21  Mr. Mancuso.

22         The person the Court is asked to rely on now about

23  this private conversation he had in which purportedly

24  Mr. Mancuso because, oh -- in words and in effect, "You know

25  Vinnie told you to do.  You ought to do that."

1           The sum and substance of the entire case as to the

2   Pizzolo murder with respect to Mr. Mancuso, period, start and

3   finish.

4           That is why this guy, Cicale, is the key here, and

5   that's why everything that has to do with his credibility is

6   absolutely vitally important.

7           We're asked -- the Court is asked and the jury will

8   be asked to convict a man of a crime that holds a life

9   sentence here based on the word of Cicale and that one

10  incident.  That is a shocking proposition, given what we

11  now -- what we knew earlier about Mr. Cicale, frankly, but

12  what we now have strong reason to believe as to Mr. Cicale.

13          We have -- again, to crystallize the issue, there is

14  no speculation with respect to this issue.  What we have is --

15  this is part of the overview -- credible evidence from a

16  witness the Government has vouched for repeatedly, who has

17  testified for the Government in cases in this district

18  repeatedly, including a death penalty case, and very

19  recently -- and I am not using the names and so on because of

20  this whole protective order issue still, but the Court is

21  aware of all of these facts.

22          Evidence comes from that credible witness, according

23  to the Government -- and, by the way, we know they have also

24  written letters vouching for that credibility and his value to

25  the Government.  The Court is aware of that also.

1          The credible evidence from that witness that Cicale

2   concocted a phony murder plot in the prison -- and I don't

3   have to detail all of the facts.  The Court is familiar with

4   those facts.  But the point of it is there is no speculation

5   here.

6          Once we reach that threshold that we have credible

7   evidence to believe that Cicale engaged in this phony murder

8   plot, we need not be satisfied -- there is no one is this

9   process who should be satisfied with the Government's

10  assertion in the letter -- I think it was February 15th of

11  this year -- Cicale denies the allegations.  That is just not

12  sufficient.  That is not sufficient to fulfill the

13  Government's obligations, and it certainly doesn't stop our

14  right and ability to investigate.  But we don't have the

15  ability to investigate in any kind of meaningful way because

16  we have no access to the witnesses.  We have no access to the

17  document.  We have been given a handful of selected documents

18  that were submitted to the Court and to us, and those include

19  the correctional officer -- correctional officer's affidavit.

20         But that only tells us we have to look further; that

21  there really is something here that went on.

22         Again, I have laid out for the Court in the motion

23  papers each of the items that we seek, and those are only the

24  ones we know about.  Each of the items that we seek with

25  respect to this Cicale phony murder plot and the kinds of

1   witnesses for whom we seek access, not just CW-1 or WI-1 or

2   CW-2 or WI-2.  By the way, we still don't even know how many

3   people there are being referred to by these kinds of initials,

4   let alone their identities.

5            And that troubled the Court when we were up here

6   even in February.  But we lay out in the motion papers all of

7   those kinds of things.

8            But, again, to crystallize the issue, I mean, let's

9   take something that to me has always struck me as one of the

10  most beyond the pale type of documents or set of information,

11  and that is this seven-page letter.  We are told by a

12  correctional officer in her affidavit that CW-1, the person

13  who first busted Cicale on this phony murder plot -- that CW-1

14  wrote a seven-page letter which we're told describes this

15  incident.

16           Now, we have asked for that, and the Government has

17  responded to Mr. Basciano's lawyers on that point that in an

18  abundance of caution they submitted that document to the Court

19  under seal.  That runs beyond the pale.  We have to have

20  access to that document.

21           But most importantly, I think, we should have access

22  to all of the investigative reports on this, the memoranda

23  written by the correctional officers about this.  We must have

24  access to the witnesses.

25           And as I say in the motion papers, I think because

1   we have, for example, surprisingly offensive provision in the

2   affidavits by the correctional officers, at the end that they

3   were told not to discuss this issue with anyone else.  I think

4   that the time has come -- and I don't say that this

5   U.S. Attorney's Office told them that.  They don't say who

6   told them that, but they say they were told that.

7          All of these things, the denial of access to these

8   witnesses -- and it goes beyond, by the way, of course, CW-1

9   and CW-2.  We are told in Officer Santamaggio's second

10  affidavit that many inmates in this Wit Seg Unit were

11  approached by Cicale for the purposes of enlisting them in

12  this phony murder plot, and they rejected him.  The fact of

13  the matter is, we ought to be entitled to interview all of

14  those people because when Cicale gets up on the witness stand

15  and denies the allegation, as we are told he does, the

16  Government is going to argue to the Court, I'm pretty sure in

17  further cross-examination on that and calling other witness --

18  if not for the cross-examination, but calling witnesses about

19  this incident ought to be barred as unduly collateral, and we

20  will deal with that argument at the time.

21         But, clearly, Judge, given the Court's independent

22  obligation under *Napue*, *Wallach*, and etcetera, let alone the

23  Government's obligation, since we know that these things exist

24  ahead of time, we don't wait until the time of trial to find

25  out how strong is this credible evidence because remember, if

1    CW-1, the Government's star witness and these other -- in this

2    other case on several occasion at trial, if CW-1 is adamant

3    what happened and detailed in his rendition about what

4    happened, well, then that puts the Court and everybody else on

5    notice that maybe Cicale is not telling the truth in these

6    denials.  After all, he has got a great incentive to deny it.

7         Think of all of the areas of cross-examination that

8    this incident gives rise to.  Now, look, there was plenty to

9    play with with Cicale beforehand.  This guy is a bad

10   character, a bad actor.  There was a lot to cross-examine him

11   on.

12        But this thing was like manna from heaven in a sense

13   when we learned about this because it seems that there is no

14   end to what this Cicale will do to pervert justice and to try

15   to help himself.  I mean, talk about greed.  The guy already

16   was designated as a witness with the Government and had an

17   opportunity to help himself, but that wasn't enough.  He has

18   to now concoct a phony murder plot in the prison and target a

19   guard on top of it?

20        But this information alone -- I mean, the Court can

21   reel it off faster than I can and better than I can, but, you

22   know, there is a breach of an agreement here.  There is a

23   willingness to breach an agreement.  There is no consequence

24   for breaching an agreement.  There is the integrity of the

25   act, investigation, which is crucial under *Kyles*.  All of

1    these Constitutionally based decisions.

2           There is continuing lies and denying the thing.  On

3    and on and on.  And then at the heart of it, and it really

4    makes this whole underlying incident not collateral is what we

5    are dealing with here, the entire fabrication of whole cloth

6    of a murder plot and who was involved.

7           Well, that is one of the defense theories in this

8    case, of course; that Cicale concocted whether or not --

9    concocted his role in the murder plot, but most importantly to

10   Mr. Mancuso, out of whole cloth he put a person into this

11   murder plot that Cicale concocted, solely for purposes of

12   hurting a person that he hated and wanted killed.

13          Well, here is Cicale again, if the incident is to be

14   believed -- and we are told by CW-1 and others that there is

15   reason to believe that the incident occurred -- that is what

16   he is doing again.  While he is in the Government's employ, he

17   is concocting out of whole cloth a fabricated role for people

18   in a murder.

19          Judge, I lay out in my thing, as I say, all of the

20   different things.  I mean, there is no point in my reading a

21   list of 20 or 30 items.  But again, the day is -- the hour is

22   late as to all of this stuff.  We need all of these things.

23   This is not a close question on this one.

24          Thank you very much, sir.

25          THE COURT:  Thank you.

1          Mr. Goldberg.

2          MR. GOLDBERG:  Your Honor, that was powerful

3     summation, but the question before the court is a

4     straightforward one:  Has the Government complied with its

5     *Brady* obligations and its Rule 16 obligations.

6          We set forth in our papers how we have not only

7     complied; we have gone above and beyond what the Court and the

8     law requires.

9          With respect to *Brady*, it is clear that a defendant

10    cannot use *Brady* as a tool to force the Government to

11    investigate details -- evidentiary details that the defendant

12    wants the Government to investigate.  The Government has

13    disclosed, and I know this is set forth in our papers but I

14    think it is worth mentioning, the name of the inmate, we have

15    described the statements that the inmate claims that Cicale

16    made, we have provided in camera the statement from CW-1, we

17    have provided the contact information for the inmate's

18    attorney, we have provided the affidavits prepared by prison

19    employees in relation to the alleged phony plot, and we have

20    specifically responded to, point by point, the request by both

21    Mr. Mancuso's attorney and Mr. Basciano's attorneys.

22         Simply put, we have nothing further to produce about

23    the purported allegations.

24         Rule 16, as we have indicated in our papers,

25    provides no further relief because the question is one of

1   materiality.  And although it is in a slightly different

2   context, Your Honor has already ruled on March 24 that these

3   matters are not material because the defense is already aware

4   of the basic contours of the allegations, and they could look

5   into them.

6         With respect to this grand claim that Dominick

7   Cicale is the end game with respect to Mr. Mancuso, we have

8   indicated in our papers and Mr. Schoen fails to recognize it

9   here that there is a recording that I'm sure Your Honor is

10  fully familiar with where Vinnie Basciano identifies Michael

11  Mancuso as the person who gives the final order to kill

12  Randy Pizzolo.

13        Unless the Court has further questions, that is it.

14        Thank you.

15        THE COURT:  Anything further?

16        MR. SCHOEN:  Certainly after they have given

17  point-by-point responses to our request, the response has

18  been, for the most part, you don't get any more.  Nice

19  request, but sorry.

20        I'll say it again.  Dominic Cicale is the starting

21  and end point with respect to this entire case against

22  Mr. Mancuso.  I know Mr. Goldberg to be an honest guy.  I know

23  he is not intentionally misstating the record, but it's hardly

24  at this point now -- I know the Government has taken offense

25  in maybe the way I have done it, and maybe it was offensive.

1          THE COURT:  Just --

2          MR. SCHOEN:  But anyway, anyone -- anyone who looks

3     to -- anyone who looks at and listens to these tapes to which

4     Mr. Goldberg refers would come to the exact opposite

5     conclusion.  It is not possible to fairly read the Basciano

6     Massino tapes to come to the conclusion that Mr. Mancuso not

7     only gave of the final order, even knew about the Cicale plan

8     to kill Pizzolo.  It's just not possible.

9          And, again, there are a million examples -- and that

10    is an exaggeration.  There are many examples in those tapes

11    that prove the point.

12         But getting to the end, one of the, again, best

13    illustrations of it is there is a discussion on the tapes

14    about what is going on.  Massino wants to know what is going

15    on with Cicale out there and Mancuso.  There is dissension on

16    the streets and all that.

17         And Basciano tells him on that second tape that he

18    thinks that Mancuso probably suspects that Cicale had Pizzolo

19    killed; and, therefore, he is worried and he is scared that

20    something like that could happen to him.  That is not possible

21    to reconcile with the idea that Mr. Mancuso ordered the hit,

22    plus there are places on the tape when Basciano says, "I did

23    it.  This is just me," and all that.  There are many, many

24    examples in there.  We can't take an isolated incident.

25         And they did it -- you know, we are going to get to

1  it, I am afraid, with the anonymous jury thing.  They did it

2  again there.  It is completely out of context, and it is

3  simply not a fair reading.

4          Again, that is not a close call.  Rule 16 we do say

5  provides an independent basis, and I have cited the exact rule

6  that clearly this is material to preparing a defense.  The

7  whole defense in the case is cross-examination of Dominick

8  Cicale.

9          THE COURT:  All right.  Thank you.

10          MR. SCHOEN:  Thank you, Your Honor.

11          THE COURT:  On the anonymous jury.

12          MR. SCHOEN:  Can I just go first on that, Judge?

13          Is there motion?

14          MR. GOLDBERG:  If the Court has questions;

15  otherwise, well rely on our papers.

16          MR. SCHOEN:  I would like just a moment to get my

17  notebook.

18          THE COURT:  Sure.

19          MR. SCHOEN:  I am the one who has to catch a plane;

20  so I will make it brief, Your Honor.

21          THE COURT:  I have a few things to say too.

22          MR. SCHOEN:  All right.

23          THE COURT:  Go ahead.

24          That should shorten your decision.

25          MR. SCHOEN:  Yes, Your Honor.  It does.

1          Judge, on the anonymous jury, I mean, the --

2     unfortunately, as the Court is aware, I tend to be too wordy

3     in the written submission; so I would like to cut to the chase

4     here.

5          And that is the thrust of the Government's argument

6     is this is an organized crime case; therefore, there should

7     be -- that is the underlying thrust of the argument.  This is

8     an organized crime case; therefore, there should be an

9     anonymous jury because organized defendants, after all, are

10    dangerous, et cetera.

11         Now, the Court knows, and has written extensively --

12    and the Government knows.

13         The Court has written extensively to this -- to this

14    notion; that is that we cannot just grant an anonymous jury

15    based on organized crime or allegations of organized crime

16    membership.  So what the Government has done in this case has

17    reached and tried to fit in evidence that the believe or

18    suggest to the Court fits into the various prongs.

19         Now, we took issue in our papers the Government's

20    five-factor case.  I had my three-factor Second Circuit case.

21    What do I say?  I mean, certainly the five-factor case -- the

22    five factors the Government suggests resemble what the other

23    Courts have used, and in a couple of cases in this district

24    have actually been used by the Court.

25         So whichever we go with, I think -- what I have to

1    ask the Court -- and I may be, someone suggested, you know,

2    running uphill on this because I know this is the trend in

3    this district.  But we always have to take a step back and

4    remember the principles.  And the underlying principles are it

5    is a dramatically disfavored exception, only to be used when

6    genuinely called for based on sufficiently -- a sufficient --

7    sufficiently strong reason to believe that the jury would need

8    protection.  It is a drastic measure.

9              The bottom line -- we address each of the factors in

10   this.  The bottom line is as to Mr. Mancuso, my client, and

11   that is all that I am raising here.  And as I say in the

12   papers, I don't want to step on anyone else's feet with

13   respect to facts.  Everyone joins in the motion.  If anyone

14   has separate submissions to make on the facts, I am open to

15   them.

16             But the bottom line is there is absolutely no

17   evidence in his history of the kinds of things that are

18   appropriate considerations for an anonymous jury.  That is no

19   evidence of jury tampering or obstruction or willingness to

20   interfere with the jury process.  It is certainly not

21   sufficient to justify this kind of drastic and disfavored

22   exception.

23             And that is really what the *Blackshire* case in the

24   Second Circuit says we focus on, and not all of these other

25   kinds of things.

1          Again, I think, wordy or not, I address these in

2    motion papers.

3          THE COURT:  All right.  Thank you.

4          MR. SCHOEN:  Thank you.

5          THE COURT:  Does anyone else want to speak to the

6    issue on the defense side?

7          MR. SERCARZ:  I would like to make an observation,

8    Your Honor.

9          The way that the motion papers were presented to the

10   Court, you were sort of given an either/or choice.  You were

11   given the choice not to consider an anonymous jury, to reject

12   it here because the proof has not been made that it is

13   appropriate here, and we all joined in that; or do we impose a

14   certain set of remedies that we -- for which we use the

15   shorthand of an anonymous jury.

16         By anonymity isn't the only remedy that is being

17   proposed here.  It is also being proposed that the jurors be

18   transported by agents of law enforcement to a certain place

19   away from the courthouse, meaning that the very first thing

20   that happens to them in the morning and the last thing that

21   happens to them at night is that their, quote, unquote, safety

22   is being assured by being accompanied by law enforcement.

23         The observation is made that a neutral explanation

24   dealing with jury privacy can be provided, but in the course

25   of a six- or eight-week or ten-week trial, on a daily basis

1  that explanation is, to some degree, belied when there are

2  days during the trial when the press does not appear or it

3  turns out that the case gets less newspaper and media coverage

4  than we anticipate and yet the marshals are transporting these

5  the anonymous jurors day in and day out.

6          And, To me, it is strange credulity to believe that

7  the jury is not going to infer from that that there is some

8  concern about their safety.

9          You have heard the arguments as to whether or not

10 the threshold has been met, but the Court has not heard any

11 arguments about whether or not there are less intrusive

12 alternatives than the ones that have customarily been used in

13 this district to insure that the Court will have no concern

14 about jury tampering, and yet which are more likely to afford

15 these defendants the fair trial to which they are entitled

16 which is free of prejudice.

17         I was not going to raise the issue of alternatives

18 because it weakens the argument that the Government has not

19 really met the threshold of requiring jury anonymity and all

20 that goes with it.  But I would like an opportunity, and if

21 now is my only opportunity, I will speak to it.

22         But I would like the opportunity to propose in the

23 event that this Court is going to find that some form of

24 protection, in quotes, is necessary, that we have the

25 opportunity to speak to the Court on a methodology that is

1   less intrusive to our clients's right over the course of a

2   six- to eight-week trial.  If the Court says now is the only

3   time, I am ready to talk to you about that.

4          If the Court wishes to rule first on the issue of

5   jury anonymity and the attendant factors but give us an

6   opportunity to talk about other things, I would like to avail

7   myself of that, if I may.

8          THE COURT:  What is the -- what is the harm to the

9   defense in jury anonymity to the extent that it has been

10  proposed, wherein they are going to know a great deal about

11  the individual members of the venire.  You are not going to

12  know their names, their addresses, or their phone numbers.

13  You will know the neighborhood they live in, the county.  You

14  will know, you know, their ethnic background, their education,

15  and various other elements of their background, but you just

16  won't know certain rather specific identifying information.

17         MR. SERCARZ:  A hypothetical.  And maybe the

18  Government would be the one who was prejudiced by this one.

19         The defendant says he works for a -- withdrawn.

20         The potential juror says he works for a construction

21  company.  We don't get his name.  Unbeknownst to any of us,

22  this construction company is a construction company which is

23  allegedly infiltrated by organized crime.

24         Has somebody been deprived of a material piece of

25  information?

1          The construction company is one that is allegedly

2     under investigation because of ties to organized crime.  The

3     company has allegedly been the victim of an extortion by

4     someone.  Without the information regarding the individual's

5     place of employment, including the name of that place of

6     employment, a critical piece of information is lost that one

7     side or another might use in order to render a challenge for

8     cause.

9          And I am deliberately using an example where the

10    Government is probably being deprived of salient information

11    that they would use to exercise a challenge for cause, and I

12    am doing it for a reason.

13              THE COURT:  Right.

14              MR. SERCARZ:  Whenever we -- okay.

15              THE COURT:  There are ways of dealing with that in

16    voir dire, as we do it all of the time, particularly in these

17    more serious cases when there are individuals who are dealing

18    in death penalty cases where we go into extensive questioning.

19    Sometimes the questioning takes place by the Court without the

20    parties present in order to elicit certain that maybe -- that

21    the Court believes is -- may be found germane to the decision,

22    and then that is related to the attorneys.

23          And the way I handle it, quite frankly, is if any of

24    the attorneys believe that more information is needed in order

25    to have a fulsome understanding of the background of the

1   potential juror, then we -- we fashioned a method of obtaining

2   that information that will not have the outcome of disclosing

3   the juror's name, address, and phone number.  And it may just

4   be in some cases that is not possible, but in most cases I

5   think we have been very successful.

6          You know, I interviewed 269 prospective jurors in my

7   death penalty trial individually.  My sense is that we

8   received a great deal of information about those potential

9   jurors that was not disclosed in their questionnaires, and we

10  followed it up on answers that didn't provide sufficient

11  information so that the Court and the attorneys could make

12  appropriate and informed decisions about whether to strike

13  certain juror candidates.

14         I understand your point, but there are ways of

15  dealing with that in an anonymous jury context.

16         I would be a little more interested in -- in knowing

17  how you think we might resolve the question, should I think

18  that it is -- some sort of protection is needed, physical

19  protection of the jurors.  How would we solve the problem with

20  respect to the question of a semi-sequestered jury?

21         Do you have anything on that?

22         MR. SERCARZ:  Yes.

23         The answer that I have always given is as follows,

24  Your Honor.

25         In the annals of those cases in which jury tampering

1   has been found, it has, to my knowledge, always been the case

2   that only one juror has been approached, and that that

3   individual has been designated as a juror at the time that

4   that individual has approached -- has been approached.

5            What I am about to suggest --

6            THE COURT:  I am sorry.  Has been designated by

7   whom?

8            MR. SERCARZ:  Let me -- let me get to the punch

9   line, and you will see where I am going.

10           I proposed in other cases, Your Honor, as a less

11  onerous method of jury selection and one that preserves more

12  of the defendants's rights that rather than selection

13  12 jurors and the requisite number of alternates, that you

14  select 18 people at once, and that the decision is not made

15  until the eve of jury deliberation as to which 12 are going to

16  serve on the jury and which six or four or two are going to be

17  the alternates.

18           It has the salutary effect of making sure that all

19  of these people listen throughout the trial because every one

20  of them is going to be serving on the jury, and there are

21  cases where protection of some sort would be helpful or

22  necessary, the threshold has been met, but that kind of a

23  safeguard would be enough to insure that people are not

24  approached for improper purpose.

25           THE COURT:  Which 12 will I select?

1          MR. SERCARZ:  It can be done by lot on the eve of

2   deliberation.  And from the time that the jury is selected and

3   the alternates are discharged, then at that point measures can

4   be taken during the deliberations to safeguard the sanctity of

5   the jury's deliberation.

6          I would urge that instead of transporting people to

7   a single place throughout the course of the trial, day in and

8   day out, back and forth.  Indeed, I feel that it is enough to

9   overcome the need for anonymity in virtually all of the cases

10  where an anonymous and impartially sequestered jury has been

11  granted.

12         THE COURT:  Okay.  Mr. Schoen, do you have an idea

13  too?

14         MR. SCHOEN:  Yes, Your Honor.

15         I have to respond to one paragraph.

16         The Court asked the question a moment ago, what

17  prejudice do we suffer really here, given that the Court's

18  questioning, the intensity is exhaustive, et cetera.  And the

19  answer was the information base is kind of prejudiced.  We may

20  have a problem with getting information.  That is, of course,

21  one of the problems.

22         Frankly, I see I may be spitting in the wind here,

23  but I have to do it because of the very serious proposition

24  that each of us in this process has to take control of, and

25  that is the whole idea of an anonymous jury.  I know the Court

1    takes it seriously, but we as lawyers have to take it

2    seriously also.

3           I am going to give you one paragraph on what

4    prejudice is.  And prejudice is much more direct than lack of

5    information.  It is what is put in the jurors's minds.  I am

6    going to quote from a guy here.  I put it in my papers,

7    Page 5.  One of the most courageous judges in the South during

8    the Civil Rights period in my book of unlikely heroes.

9           Frank Johnson wrote on this question when he granted

10   it.  This is my friend, and this is my mentor.  I quote him

11   for that reason, frankly, because I respect what he writes and

12   says.

13          He said, "Unquestionably, the empanelment of an

14   anonymous jury is a drastic measure, one that should be

15   undertaken only in limited and carefully delineated

16   circumstances."

17          We are all on the same page with that.

18          "An anonymous jury raises the specter that the

19   defendant is a dangerous period from whom the jurors must be

20   protected, thereby ^implicating the defendant's Constitutional

21   right to a presumption of innocence, the enforcement of which

22   lies the foundation of our administra -- our administration

23   of our -- the administration of our criminal law."

24          That is fundamentally where the prejudice comes in,

25   besides you have an informational perspective.  And I know

1  that the Court didn't mean it, but when we get into a

2  discussion about, well, what prejudice would they suffer

3  anyway because we ask a lot of questions, I appreciate the

4  Court's intended thoroughness in asking those questions.  I

5  don't mean to not acknowledge that.

6          But it just doesn't -- the prejudice is there, and

7  the alternative is root to the basis of a process that we are

8  told has to be addressed, one, only in exceptional

9  circumstances for a reason:  Because it puts something in the

10  minds of these jurors, and no juror can ignore it.

11          That is what I think is really the answer to what

12  prejudice we suffer.  As corny as it might sound, that is my

13  view on it.

14          MR. GOLDBERG:  Your Honor, three quick points.

15          First, the Second Circuit, by virtue of its

16  decisions on anonymous juries, has acknowledged and -- that

17  passage and gone in a different direction.

18          Second, Mr. Sercarz's suggestion about having 18 and

19  then choosing 12 on the eve of trial rings a bell with me

20  because I think he suggested it about years ago in a case --

21          MR. SERCARZ:  I did.

22          MR. GOLDBERG:  -- that we -- we faced each other,

23  and the Judge declined to do that.  And the reason is because

24  although it may reduce the risk of tampering, it certainly

25  doesn't eliminate it.

1          And, third, we can talk about what measures can be

2    taken to reduce the prejudice -- the prejudice to the

3    defendants of having marshals with them all day long, but one

4    thing that comes to mind is -- is having Your Honor routinely

5    instruct the jurors; again, remind them they should draw no

6    inference for or against the defendants in light of that

7    protection.

8          Thank you.

9          MR. SCHOEN:  Just to kind of close all this, I just

10   want to say that -- I said that this seven-page letter may be

11   the most clear example of something beyond the pale.  I think

12   there is something that is maybe more beyond the pale.

13         How about if we make -- the Court make the

14   Government choose, at least, and disclose who is telling the

15   truth between its witness in the other case who said

16   unequivocally Cicale gave him this phony murder plot and

17   enlisted other in it or Cicale.

18         If the other fellow is lying, what are the -- what

19   are the consequences to him?  They cannot both be telling the

20   truth.  That is 100 percent sure.  Maybe that is a more basic

21   request.

22         THE COURT:  All right.  Thank you.

23         MR. MITCHELL:  I'm sorry.  Just one -- one issue on

24   the anonymous jury.

25         And that is that I don't believe -- and I might be

1   wrong, and the Government can correct me if I am wrong -- but

2   Attorney Schoen represented that there is no allegation in the

3   original allegations with respect to Mr. Mancuso of

4   obstruction and tampering.

5           To my knowledge, based on the Government's pleading,

6   to my knowledge in this case there are no allegations with

7   respect to any of the four defendants who are scheduled to

8   start trial before Your Honor.

9           And I want to complete the record.  I understand

10  that there are allegations against other alleged members of

11  the family, but with respect to specific individualized

12  allegations with reference to any of the defendants on trial

13  here, I don't believe there are any.  I can be corrected on

14  that, but I don't believe the Government has so represented.

15          THE COURT:  All right.  Thank you.

16          MR. GOLDBERG:  Your Honor, I need to correct

17  something.  I'm sorry.

18          One of the charges that the Pizzolo murder was an

19  obstruction of justice.

20          THE COURT:  Which murder?

21          MR. GOLDBERG:  The Pizzolo murder.

22          We indicated in our papers that -- that Mr. Basciano

23  indicated that Mr. Mancuso had told him that Randy Pizzolo was

24  a rat, and so there is an allegation with respect to

25  Defendants Aiello and Mancuso that there was obstruction in

U.S.A. v. MICHAEL MANCUSO, ET AL.                    63

1   this case.  Your Honor is fully aware that the case law

2   indicates that the defendants on trial do not need to have

3   participated in any way in tampering for there to be an

4   anonymous jury.

5              THE COURT:  Yes.

6              MR. SCHOEN:  I mean, you know, again, as you said,

7   Judge, we addressed that in the papers.  But, again, taking

8   out of context, this case has been tried before the Court a

9   couple of times, the Pizzolo murder.  There was never a theory

10  put forward that Pizzolo was killed because of the suspicion

11  that he was a rat.  That is simply not there to suggest that

12  that is the case.

13             MR. GOLDBERG:  The Pizzolo murder has not been

14  tried.

15             MR. SCHOEN:  I understand, but there have been

16  allegations that --

17             THE COURT:  I know.

18             But I thought you said that I had tried the Pizzolo

19  murder, and so I don't know everything there is to know about

20  the Government's purported facts on the Pizzolo murder.

21             MR. SCHOEN:  I mean, I pointed out already that

22  404(b) evidence on the Pizzolo murder has come in, the Court

23  has had that before it.  There is 3500 material from Cicale

24  about it.  There has never been put forward a theory that he

25  was killed because he was a rat.  And more than that, the same

U.S.A. v. MICHAEL MANCUSO, ET AL.                     64

1    tapes that he has drawn all of the excerpts from go on and on

2    and on about how misguided that yahoo purportedly was for

3    killing the guy because he was a jerk.  Massino tells him, "We

4    don't do things like that, kill a guy because he is a jerk or

5    a braggart."  Nobody said because he is a rat.

6              THE COURT:  Anyone else?

7              MR. SERCARZ:  Not on this point, but before we

8    adjourn, may I have a moment with my client?  I want to --

9    there have been some logical issues regarding the receipt of

10   materials, and I want to make sure --

11             THE COURT:  All right.

12             MR. SERCARZ:  -- there is nothing --

13             THE COURT:  I am not done.

14             MR. SERCARZ:  Okay.

15             THE COURT:  So when I am done --

16             MR. SERCARZ:  Thank you.

17             THE COURT:  -- then you can meet with your client.

18             If there is something that you want to bring to the

19   Court's attention --

20             MR. SERCARZ:  There may be, but I'll wait.

21             THE COURT:  Well, let's -- I am going to reserve on

22   the motions.  And I have one other item to discuss.

23             Now, Mr. Goldberg, about how long do you think that

24   the Government's case is going to take, assuming we go ahead

25   as is currently planned.

1          MR. GOLDBERG:  I think once we start with opening

2     statements, about six to eight weeks.

3          THE COURT:  All right.  All right.  Thank you.

4          Now, this trial is anticipated to last at least six

5     weeks, and the Court expects that the parties will call dozens

6     of witnesses.

7          Is that a fair statement?

8          MR. GOLDBERG:  It is, Your Honor.

9          THE COURT:  Okay.  In consideration of the frailty

10    of human memory, the Court intends to institute a new

11    procedure at trials exceeding two weeks in duration, one that

12    is currently in practice in a number of courts around the

13    nation.  The Court plans to take photographs of testifying

14    witnesses and allow the jury to use those photographs during

15    deliberation as a demonstrative aid.

16         I want to emphasize at the outset, particularly

17    since this would be the first time that this Court has used

18    such a procedure, that any pictures taken will be strictly for

19    the use of the jury only and not be disseminated to anyone

20    else.

21         After a verdict is reached, photographs will be

22    retrieved by the clerk of the court and destroyed.  The Court

23    is cognizant of the important potential safety concerns of

24    cooperating witnesses and undercover officers and other

25    sensitive witnesses and will carefully monitor the taking,

1  use, and disposal of such photographs.

2         With that said, the Court believes that it would be

3  extremely useful in such a long trial for the jurors to be

4  able to refresh their memories about witnesses's testimony.

5         The manual of complex litigation states that, quote,

6  jurors understand better and understand more when information

7  is presented both visually and verbally, end quote.

8         Being able to view these photographs is a corollary

9  to the jurors's ability to take notes.

10        As I mentioned, this procedure has been employed by

11 a number of district courts, and this Court has not been able

12 to find any law in this Circuit that bars this Court from

13 doing the same.

14        Note, *U.S. v Johnson*, 362 F.Supp.2d, Northern

15 District of Iowa 2005.  Finding that photographs of testifying

16 witnesses qualifies as demonstrative exhibits and that, quote,

17 showing the jurors photographs of witnesses at the end of the

18 trial that is likely to last three months or more and likely

19 to involve over 100 witnesses would be an effective way to

20 refresh the jurors's memories as to the testimony of

21 particular witnesses, end quote.

22        Specifically, the Court will employ the procedure

23 that is currently used by a number of district court judges in

24 the District of Minnesota.  Counsel will be directed to

25 forewarn each witness that my clerk will take their photo

1   beside the witness stand when they come in; that way all of

2   the photos will be identical, at least in background.  The

3   witness, after being photographed, will be sworn and testify.

4        At the end of the trial and after inspection by the

5   parties, the photos will then be provided to the jury for

6   their deliberations to assist the jurors's recollection of the

7   witness -- witnesses as they evaluate the testimony in the

8   case.

9        And, finally, the photos will be destroyed after the

10  jury reaches its verdict.

11       The Court believes that this procedure will be

12  extremely helpful to jurors.  The Court does not know if there

13  are any objections from the parties in this case, but to the

14  extent that there are any such objections, the parties are

15  directed to file those objections with the Court no later than

16  noon on July 31st, 2008, two weeks from today.

17       So is there anything else?

18       MR. GOLDBERG:  Not from the Government, Your Honor.

19       MR. SERCARZ:  Your Honor, I have a scheduling issue.

20  I think I can address the issue.

21       THE COURT:  Okay.  Go ahead.

22       MR. SERCARZ:  I want to talk about with regard to

23  Mr. Donato.

24       But if I recall correctly, and I may be wrong, there

25  is a deadline for 404(b) disclosure, and we agree that there

1   was going to be another round of motions -- in limine motions,

2   but we didn't schedule it.

3          Am I right?

4          MR. GOLDBERG:  I don't believe that we have

5   scheduled a deadline for the 404(b) either.

6          MR. SERCARZ:  Does the Court wish to address these

7   issues now or --

8          THE COURT:  Well, let me hear from the Government

9   since this is about 404(b).

10          MR. GOLDBERG:  Well, what we were planning on doing

11   was filing our 404(b) motion four or five weeks before the

12   start of opening statements.

13          THE COURT:  Remind me.

14          MR. GOLDBERG:  Handing out questionnaires on

15   September 2.  It usually takes about two weeks before we get

16   to openings; so we are thinking about we can do August 15th,

17   which is actually the same deadline for the 3500 material and

18   the exhibits.

19          THE COURT:  That sounds fine to me.

20          Any problem with that?

21          MR. SERCARZ:  The Court agreed that there would need

22   to be a second round of motions.  What prompted it is, as I

23   mentioned, for example, that with regard to the disks or the

24   purported conversations that the Government intended to

25   introduce, there may be different confrontations and hearsay

1   concerns in this trial than there were in the trial when all

2   of these statements presumably came in as admissions because

3   Mr. Basciano was a participant in the conversations, and he

4   was the one on trial.

5            If I recall correctly, without the minutes the Court

6   said, yes.  I can see there will be a second round of motions.

7            THE COURT:  All right.

8            MR. SERCARZ:  We are going to have an in limine

9   motion regarding the expert, Agent Carillo, as well.  I

10  thought it might be helpful if we try to schedule that now.

11           THE COURT:  Well, August 15th?

12           MR. SERCARZ:  Your Honor, may I suggest that we have

13  an opportunity to review the 404(b) material and to make our

14  objections to that because that may inform any in limine

15  motion we are making as well.  My suggestion was going to be

16  to do it later, and I hasten to ask --

17           THE COURT:  I am sorry.

18           MR. SERCARZ:  We can do it later, with time to

19  digest the 404(b) material that we were given.

20           THE COURT:  I need to digest the motions, we are --

21  we are moving in the direction of the trial here.

22           The 22nd of August for any motions?

23           MR. SERCARZ:  Your Honor, I will be away the week of

24  the 18th.

25           Can we do it the 25th, which is a Monday?

1          THE COURT:  That is fine.

2          Response from the Government, September 5th?

3          MR. GOLDBERG:  That is fine.

4          THE COURT:  All right.

5          MR. SCHOEN:  I know everybody else is probably

6    familiar with the regular schedule, but no court on Fridays?

7          THE COURT:  Well --

8          MR. SCHOEN:  We have those funny weeks.

9          THE COURT:  We have the funny weeks with the Jewish

10   holidays, and I thank you for the letter laying out the

11   schedules for the Jewish holidays.  My sense is that in the

12   weeks in which we are taking two days for the Jewish holidays

13   we will work a Friday.  Otherwise, on weeks when we are --

14   when we can go Monday through Thursday we will not work a

15   Friday.

16         MR. SCHOEN:  Thank you, Judge.

17         THE COURT:  Oh, no, no.  We won't have a trial on

18   Friday.  You will work the Friday.

19         MR. SCHOEN:  Yes.

20         MR. REEVE:  Your Honor, for informational purposes

21   only.

22         I have discussed this with Government counsel.  I

23   recently learned that Mr. Indelicato is having some health

24   problems.  A series of test, upper GI tests were ordered.  He

25   was advised by the medical unit there that those --

1  sometimes -- the period is anywhere from 30 days to 90 days to

2  get the tests done.  I want to make sure that it happens well

3  in advance so that if there are problems it can be dealt with

4  before the trial starts.

5          I'm going to make an effort.  The Government is

6  going to make an effort.  If I need the Court's assistance,

7  I will let the Your Honor know.  I just wanted to inform the

8  Court.

9          THE COURT:  Is he at the MDC?

10          MR. REEVE:  Yes.  He is, Your Honor.  He is here.

11          THE COURT:  All right.

12          MR. REEVE:  We'll work on it, but I just wanted to

13  highlight it.

14          THE COURT:  You or Mr. Goldberg should let me know

15  if there is a problem, and I will contact the warden, if

16  necessary.  I will try to move this along.

17          MR. REEVE:  Thank you, Your Honor.

18          THE COURT:  It needs to be handled before the trial,

19  obviously.

20          MR. REEVE:  Yes.

21          THE COURT:  All right.

22          MR. REEVE:  Thank you.

23          MR. SERCARZ:  Your Honor, rather than wasting time

24  by talking to Mr. Donato now and then come being back, it is

25  my intent to make a motion to the Court and serve the

1   Government in connection with the fact there are only limited

2   areas where the defendants can read disks of transcripts and

3   have codefendant meetings with the disks available.  I

4   understand that those areas are in short supply.

5             In the event that I require the assistance of the

6   Court in order to receive permission for those meetings, I

7   would like the opportunity upon notice to the Government.

8             THE COURT:  I take it that your client has been

9   looking at these materials all along.

10            MR. SERCARZ:  He has seen materials.  There are some

11   related to the second Basciano trial that are relevant to him

12   that he hasn't seen.

13            THE COURT:  When did that end?  That was a long time

14   ago.

15            MR. SERCARZ:  Consider the blame mine in the effort

16   to keep my client apprised and to allow him to participate in

17   his own defense in a meaningful way, it would be better that

18   he saw a disk rather than a hard transcript.  And I understand

19   that because there are a number of cases in which a number of

20   defendants need access to a limited number of computers there

21   have been problems.

22            MR. REEVE:  And, Your Honor, to be fair, we just

23   received letters -- discovery letters from the Government that

24   indicates a number of CD of conversations and so there is new

25   material that none of us have had access to and will obviously

1    pursue, and so it is relevant to that material as well.

2            THE COURT:  Now, what I would suggest is that if you

3    believe that your clients need additional library time to

4    review the documents that are on disk that you first discuss

5    it with the Government and have the Government contact the

6    legal department at the MDC to attempt to arrange additional

7    time.  And if that doesn't work, then contact me.

8            MR. SERCARZ:  Thank you, Your Honor.

9            THE COURT:  Ms. Kellman, welcome.

10           Did you want to argue anything?

11           MS. KELLMAN:  No.  I will save my argument for the

12   trial.

13           I just wanted to say, Judge, that in other cases

14   there is a tremendous amount of disks that caused a problem at

15   the MDC.  The Government counsel and I have spoken on two

16   other cases with Adam Johnson over at the MDC, and they have

17   actually set up a war room where the defendants, without their

18   lawyers, but have access to all of the computers to work

19   separate on computers, separate from the library.  And usually

20   it's just a call from the United States Attorney's Office, "We

21   need to be able to include these disks.  Can you send them up

22   there?"  They ought to be able to provide access.

23           THE COURT:  Mr. Goldberg.

24           MR. GOLDBERG:  We will work it out.  I am not

25   hearing there is a problem at the moment.  If there is, I will

U.S.A. v. MICHAEL MANCUSO, ET AL.                    74

1   make the calls that are necessary.

2              THE COURT:  Fine.

3              Let me know if there is a problem.

4              All right.  Is there anything else from the

5   Government?

6              MR. GOLDBERG:  No, Your Honor.

7              THE COURT:  Anything else from the defense?

8              MR. REEVE:  No, Your Honor.

9              Thank you.

10             MR. SERCARZ:  No, Your Honor.

11             THE COURT:  All right.  We are -- our next meeting

12  is when, the 2nd?

13             Oh, we should discuss the questionnaire.  Is it

14  ready?

15             MR. GOLDBERG:  Your Honor, we supplied a

16  questionnaire back in March.  Your Honor has invited defense

17  counsel to make objections or communicate objections to us.

18             I got an e-mail late last night highlighting some

19  areas.  I don't know if all of the defense attorneys have had

20  an opportunity to review that.  It came from Mr. Schoen.

21             Mr. Sercarz made a good suggestion, which I agree

22  with, and that is there be some communication offline and we

23  can resolve whatever problems there might exist.  I would

24  expect it can happen soon because -- subject, of course, to

25  Your Honor's ruling on the anonymous jury motion, we will need

U.S.A. v. MICHAEL MANCUSO, ET AL.                    75

1    to start preparing those.

2            THE COURT:  I think that we ought to reschedule one

3    pretrial conference here in August so that we can go over any

4    issues that occur in the next 30 days.

5            So is everyone available on the 21st or 22nd of

6    August?  Who is not here?

7            MS. KELLMAN:  I am not.

8            MR. SERCARZ:  I am not.  That is my bad week.

9            THE COURT:  The 25th of August?  That is a Monday.

10           MR. SERCARZ:  I am available.

11           THE COURT:  Is everybody available?

12           MR. SERCARZ:  Yes, Your Honor.

13           MS. KELLMAN:  If we do the 26th, it would be easier

14   for me.

15           THE COURT:  The 26th of August at 11:00 a.m.

16           Is everyone available?

17           MR. SERCARZ:  Your Honor, I have a sentencing in the

18   State Supreme Court in New York.

19           THE COURT:  How long do those usually take?

20           MR. SERCARZ:  It is a question of first come first

21   served, and I don't want to --

22           THE COURT:  Can we do it in the afternoon?

23           MR. SERCARZ:  Yes.

24           THE COURT:  2:00 o'clock?

25           MR. SERCARZ:  Yes.

U.S.A. v. MICHAEL MANCUSO, ET AL.                    76

1          THE COURT:  On the 26th of August, a Tuesday, for a

2    status conference.  This case is deemed a complex case for

3    Speedy Act purposes.  That designation continues until the

4    trial.

5               Anything else?

6               All right.  Thank you, everybody.

7               (Matter concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

U.S.A. v. MICHAEL MANCUSO, ET AL _____ 1

## 0

**05-CR-060** [2] - 1:3, 3:4
**06510** [1] - 2:2

## 1

**1** [3] - 12:6, 22:4, 22:19
**100** [2] - 61:20, 66:19
**100-6** [1] - 1:21
**10019** [1] - 2:6
**11** [1] - 23:5
**11201** [2] - 1:16, 2:14
**11217** [1] - 2:10
**115** [1] - 23:25
**11:00** [1] - 75:15
**12** [4] - 57:13, 57:15, 57:25, 60:19
**139** [1] - 2:1
**14th** [4] - 35:19, 36:7, 36:13, 36:16
**152** [2] - 2:5, 23:25
**15th** [3] - 41:10, 68:16, 69:11
**16** [4] - 23:5, 46:5, 46:24, 49:4
**17** [1] - 1:9
**18** [2] - 57:14, 60:18
**18th** [1] - 69:24
**1955** [1] - 23:9
**1959** [7] - 19:7, 19:15, 22:9, 22:22, 27:14, 27:25, 29:8
**1962(c** [1] - 22:1
**1962(d** [1] - 22:1
**1998** [1] - 24:1
**19th** [1] - 36:3

## 2

**2** [6] - 11:22, 12:4, 22:4, 22:9, 22:20, 68:15
**20** [1] - 45:21
**2005** [1] - 66:15
**2006** [2] - 12:14, 12:24
**2007** [1] - 36:3
**2008** [2] - 1:9, 67:16
**21st** [2] - 12:24, 75:5
**225** [1] - 2:13
**22nd** [2] - 69:22, 75:5
**24** [1] - 47:2
**25** [1] - 2:9
**25th** [2] - 69:25, 75:9
**269** [1] - 56:6
**26th** [3] - 75:13, 75:15, 76:1
**271** [1] - 1:16
**2800** [1] - 5:25
**2:00** [2] - 1:9, 75:24
**2:18** [1] - 3:1
**2nd** [1] - 74:12

## 3

**3** [2] - 22:10, 24:17
**30** [3] - 45:21, 71:1, 75:4
**300** [1] - 16:2
**301** [1] - 2:2
**31st** [1] - 67:16
**3500** [2] - 63:23, 68:17
**36** [1] - 8:21
**36106** [1] - 1:22
**362** [1] - 66:14
**37** [1] - 8:21
**3rd** [1] - 12:14

## 4

**4** [2] - 11:24, 24:18
**404(b** [6] - 63:22, 67:25, 68:5, 68:11, 69:13, 69:19
**404(b)** [1] - 68:9

## 5

**5** [1] - 59:7
**57th** [1] - 2:5
**5th** [1] - 70:2

## 6

**6** [1] - 19:8
**660** [1] - 12:23

## 8

**8** [3] - 19:8, 28:13, 30:11
**8(a** [1] - 21:2
**8(b** [10] - 21:2, 21:10, 21:14, 21:16, 22:12, 25:14, 25:23, 26:7, 26:16, 28:10
**8(b)** [1] - 24:2
**88** [1] - 23:25

## 9

**9** [2] - 11:25, 13:9
**90** [1] - 71:1

## A

**a.m** [1] - 75:15
**ability** [3] - 41:14, 41:15, 66:9
**able** [7] - 17:9, 17:14, 66:4, 66:8, 66:11, 73:21, 73:22
**absence** [2] - 33:19, 33:22
**absolutely** [3] - 25:19, 40:6, 51:16
**Absolutely** [2] - 17:16, 17:24

**abundance** [1] - 42:18
**accept** [1] - 12:2
**access** [11] - 41:16, 42:1, 42:20, 42:21, 42:24, 43:7, 72:20, 72:25, 73:18, 73:22
**accidentally** [1] - 10:18
**accompanied** [1] - 52:22
**according** [1] - 40:22
**account** [2] - 6:10, 23:3
**accurate** [1] - 33:18
**acknowledge** [1] - 60:5
**acknowledged** [1] - 60:16
**acquittal** [1] - 13:1
**act** [21] - 7:8, 8:1, 11:8, 12:5, 17:8, 17:9, 22:15, 25:25, 26:14, 29:4, 30:16, 30:18, 30:23, 30:25, 31:3, 31:4, 31:8, 31:15, 32:8, 33:8, 44:25
**Act** [7] - 6:7, 11:11, 11:22, 11:23, 11:25, 12:4, 76:3
**action** [1] - 36:23
**active** [2] - 25:16, 34:14
**activities** [8] - 13:12, 17:8, 18:2, 19:12, 29:10, 29:11, 32:8, 32:17
**activity** [2] - 29:3, 30:9
**actor** [1] - 44:10
**acts** [20] - 7:10, 11:10, 13:14, 22:7, 22:14, 22:16, 23:11, 26:15, 26:22, 26:25, 27:20, 28:8, 29:15, 30:4, 30:14, 31:17, 31:20, 31:25, 33:16
**actual** [1] - 28:12
**Adam** [1] - 73:16
**adamant** [1] - 44:2
**add** [1] - 33:5
**added** [1] - 10:20
**addition** [1] - 12:21
**additional** [8] - 11:8, 11:11, 14:19, 15:19, 33:19, 73:3, 73:6
**address** [10] - 9:24, 10:2, 11:3, 19:1, 28:5, 51:9, 52:1, 56:3, 67:20, 68:6
**addressed** [4] - 13:7, 34:2, 60:8, 63:7
**addresses** [1] - 54:12
**adjourn** [1] - 64:8
**administrate** [1] - 59:22
**administration** [2] - 59:22, 59:23
**admissible** [1] - 27:22
**admission** [2] - 24:7, 27:19
**admissions** [1] - 69:2
**admitted** [1] - 27:18
**advance** [2] - 8:18, 71:3
**advanced** [1] - 7:15
**adversely** [1] - 14:15
**advised** [1] - 70:25
**affairs** [2] - 17:2, 33:15
**affidavit** [3] - 41:19, 42:12, 43:10
**affidavits** [2] - 43:2, 46:18
**afford** [1] - 53:14
**afraid** [1] - 49:1
**afternoon** [23] - 3:10, 3:11, 3:12, 3:13, 3:14, 3:18, 3:20, 3:21, 3:24, 3:25, 4:2, 4:3, 4:6, 4:7, 4:9, 4:10, 4:11, 4:17, 16:6,

16:7, 20:23, 20:24, 75:22

**Agent** [4] - 8:20, 8:24, 9:11, 69:9

**agents** [1] - 52:18

**ago** [3] - 58:16, 60:20, 72:14

**agree** [4] - 15:11, 34:9, 67:25, 74:21

**agreed** [4] - 4:21, 4:24, 35:25, 68:21

**agreement** [5] - 15:3, 20:10, 44:22, 44:23, 44:24

**ahead** [7] - 28:23, 37:8, 38:1, 43:24, 49:23, 64:24, 67:21

**aid** [11] - 6:3, 6:22, 6:25, 7:7, 7:13, 7:14, 19:3, 23:4, 33:12, 65:15

**Aided** [1] - 2:16

**AIELLO** [2] - 1:7, 4:9

**Aiello** [16] - 2:9, 3:4, 4:8, 4:10, 4:12, 10:19, 11:10, 11:11, 23:3, 23:6, 23:7, 24:18, 24:23, 25:5, 25:22, 62:25

**Alabama** [1] - 1:22

**allegation** [4] - 22:23, 43:15, 62:2, 62:24

**allegations** [12] - 13:11, 16:12, 38:11, 41:11, 46:23, 47:4, 50:15, 62:3, 62:6, 62:10, 62:12, 63:16

**alleged** [14] - 8:1, 12:5, 22:22, 22:24, 24:18, 25:17, 27:20, 29:13, 30:1, 30:9, 34:12, 34:13, 46:19, 62:10

**allegedly** [5] - 25:5, 26:11, 54:23, 55:1, 55:3

**alleging** [1] - 22:10

**allow** [2] - 65:14, 72:16

**allowed** [2] - 23:17

**alluded** [1] - 13:20

**almighty** [1] - 26:11

**almost** [1] - 13:22

**alone** [6] - 23:4, 32:19, 39:16, 42:4, 43:22, 44:20

**alternates** [3] - 57:13, 57:17, 58:3

**alternative** [1] - 60:7

**alternatives** [2] - 53:12, 53:17

**AMERICA** [1] - 1:3

**America** [1] - 3:2

**amount** [2] - 15:1, 73:14

**analogy** [1] - 35:4

**analysis** [3] - 26:18, 28:5, 28:6

**annals** [1] - 56:25

**anonymity** [5] - 52:16, 53:19, 54:5, 54:9, 58:9

**anonymous** [19] - 5:10, 49:1, 49:11, 50:1, 50:9, 50:14, 51:18, 52:11, 52:15, 53:5, 56:15, 58:10, 58:25, 59:14, 59:18, 60:16, 61:24, 63:4, 74:25

**answer** [4] - 11:4, 56:23, 58:19, 60:11

**answers** [1] - 56:10

**Anthony** [8] - 2:1, 2:5, 2:9, 3:3, 3:4, 4:12, 10:19

**ANTHONY** [3] - 1:6, 1:7, 1:7

**anticipate** [2] - 27:18, 53:4

**anticipated** [1] - 65:4

**anyway** [2] - 48:2, 60:3

**apologize** [1] - 35:6

**appear** [1] - 53:2

**appearances** [1] - 3:6

**APPEARANCES** [1] - 1:14

**appeared** [1] - 39:12

**appearing** [1] - 4:12

**application** [2] - 5:17, 7:24

**applied** [1] - 21:22

**applies** [3] - 21:15, 22:12, 38:22

**appreciate** [1] - 60:3

**apprised** [1] - 72:16

**approached** [4] - 43:11, 57:2, 57:4, 57:24

**appropriate** [4] - 15:10, 51:18, 52:13, 56:12

**appropriately** [2] - 20:8, 39:8

**approval** [1] - 4:25

**areas** [4] - 44:7, 72:2, 72:4, 74:19

**argue** [6] - 25:10, 25:21, 25:22, 26:22, 43:16, 73:10

**argued** [1] - 26:5

**arguendo** [1] - 18:12

**argues** [1] - 21:18

**arguing** [4] - 9:12, 9:19, 29:1, 32:13

**argument** [22] - 4:14, 6:8, 6:24, 17:11, 18:9, 18:10, 18:11, 19:13, 26:2, 28:19, 29:25, 31:23, 32:18, 33:7, 35:7, 35:15, 37:8, 43:20, 50:5, 50:7, 53:18, 73:11

**arguments** [9] - 6:10, 6:17, 9:14, 12:3, 15:18, 19:22, 29:15, 53:9, 53:11

**arrange** [1] - 73:6

**art** [1] - 28:23

**ascribed** [2] - 6:16, 18:13

**aside** [1] - 7:25

**assault** [3] - 23:4, 25:19, 32:10

**assertion** [1] - 41:10

**assist** [3] - 19:17, 19:20, 67:6

**assistance** [2] - 71:6, 72:5

**Assistant** [1] - 1:18

**assisting** [2] - 7:1, 18:19

**association** [1] - 29:14

**assuming** [3] - 16:16, 18:12, 64:24

**assured** [1] - 52:22

**attempt** [1] - 73:6

**attendant** [1] - 54:5

**attention** [3] - 26:3, 35:14, 64:19

**attorney** [2] - 46:18, 46:21

**Attorney** [3] - 1:15, 1:18, 62:2

**Attorney's** [2] - 43:5, 73:20

**attorneys** [5] - 46:21, 55:22, 55:24, 56:11, 74:19

**August** [8] - 68:16, 69:11, 69:22, 75:3, 75:6, 75:9, 75:15, 76:1

**avail** [1] - 54:6

**available** [6] - 8:13, 72:3, 75:5, 75:10, 75:11, 75:16

**Avenue** [1] - 2:9

**aware** [9] - 6:5, 6:13, 6:15, 6:24, 40:21, 40:25, 47:3, 50:2, 63:1

## B

**background** [4] - 54:14, 54:15, 55:25, 67:2

**bad** [3] - 44:9, 44:10, 75:8

**ball** [1] - 34:24

**barred** [1] - 43:19

**bars** [1] - 66:12

**Basciano** [24] - 7:2, 7:15, 9:9, 12:13, 12:14, 12:22, 14:5, 17:19, 17:23, 18:17, 18:18, 18:19, 19:18, 23:7, 39:5, 39:6, 39:17, 47:10, 48:5, 48:17, 48:22, 62:22, 69:3, 72:11

**Basciano's** [8] - 6:6, 6:19, 12:25, 18:11, 36:10, 37:13, 42:17, 46:21

**base** [1] - 58:19

**Based** [1] - 16:1

**based** [8] - 12:21, 18:6, 37:19, 40:9, 45:1, 50:15, 51:6, 62:5

**basic** [2] - 47:4, 61:20

**basis** [10] - 14:16, 15:5, 21:12, 25:24, 26:21, 28:3, 34:12, 49:5, 52:25, 60:7

**becomes** [1] - 24:5

**BEFORE** [1] - 1:11

**beforehand** [1] - 44:9

**behalf** [3] - 3:22, 9:23, 21:1

**belabor** [2] - 18:23, 30:21

**belied** [1] - 53:1

**believes** [3] - 55:21, 66:2, 67:11

**bell** [1] - 60:19

**benefit** [1] - 7:22

**benefited** [2] - 7:16, 7:17

**BENTON** [1] - 1:15

**beside** [1] - 67:1

**best** [2] - 23:16, 48:12

**better** [4] - 36:14, 44:21, 66:6, 72:17

**between** [5] - 10:24, 25:17, 26:9, 31:8, 61:15

**beyond** [6] - 42:10, 42:19, 43:8, 46:7, 61:11, 61:12

**bit** [1] - 4:15

**Blackshire** [1] - 51:23

**blame** [1] - 72:15

**body** [1] - 11:15

**Bonanno** [10] - 7:4, 7:16, 7:17, 19:19, 20:4, 27:21, 29:6, 29:8, 30:2, 33:15

**book** [1] - 59:8

**bottom** [3] - 51:9, 51:10, 51:16

**Brady** [3] - 46:5, 46:9, 46:10

**braggart** [1] - 64:5

**breach** [2] - 44:22, 44:23

**breaching** [1] - 44:24

**brief** [4] - 9:22, 23:24, 26:4, 49:20

**briefed** [2] - 5:25, 8:9

**briefly** [4] - 6:1, 10:23, 15:16, 28:17

**bring** [3] - 15:21, 15:24, 64:18

**bringing** [1] - 26:3

**broad** [1] - 13:21

Case 1:05-cr-00060-NGG   Document 494   Filed 07/21/08   Page 79 of 91 PageID #: 5326

**Brooklyn** [4] - 1:5, 1:16, 2:10, 2:14
**brought** [1] - 18:5
**brow** [1] - 36:18
**Bruno** [4] - 13:19, 13:22, 14:4
**burden** [1] - 27:23
**Buretta** [1] - 35:20
**Buretta's** [1] - 36:8
**busted** [1] - 42:13
**BY** [2] - 1:17, 2:6

# C

**Cadman** [2] - 1:16, 2:13
**camera** [1] - 46:16
**CAMPBELL** [1] - 1:15
**candidates** [1] - 56:13
**cannot** [7] - 6:22, 8:2, 8:4, 28:10, 46:10, 50:14, 61:19
**carefully** [2] - 59:15, 65:25
**Carillo** [4] - 8:11, 8:24, 19:23, 69:9
**Carillo's** [4] - 8:20, 9:8, 9:11, 20:2
**case** [66] - 6:20, 7:12, 9:7, 12:3, 12:14, 13:17, 13:19, 16:25, 17:6, 17:15, 19:20, 21:4, 22:3, 23:12, 23:21, 24:8, 26:4, 27:9, 28:7, 29:1, 29:19, 31:7, 33:10, 35:12, 36:10, 37:13, 37:25, 38:14, 38:15, 38:20, 39:2, 39:3, 39:4, 39:5, 39:11, 39:12, 39:14, 40:1, 40:18, 44:2, 45:8, 47:21, 49:7, 50:6, 50:8, 50:16, 50:20, 50:21, 51:23, 53:3, 57:1, 60:20, 61:15, 62:6, 63:1, 63:8, 63:12, 64:24, 67:8, 67:13, 76:2
**cases** [16] - 17:6, 25:12, 39:17, 40:17, 50:23, 55:17, 55:18, 56:4, 56:25, 57:10, 57:21, 58:9, 72:19, 73:13, 73:16
**catch** [1] - 49:19
**caused** [1] - 73:14
**caution** [1] - 42:18
**caveat** [1] - 5:3
**CD** [1] - 72:24
**Cedarbaum** [1] - 26:5
**Cedarbaum's** [1] - 29:12
**certain** [7] - 36:4, 37:1, 52:14, 52:18, 54:16, 55:20, 56:13
**certainly** [7] - 28:14, 29:24, 39:4, 41:13, 50:21, 51:20, 60:24
**Certainly** [1] - 47:16
**cetera** [2] - 50:10, 58:18
**challenge** [2] - 55:7, 55:11
**challenged** [1] - 21:11
**challenges** [1] - 14:20
**chance** [1] - 37:2
**change** [2] - 11:20, 12:8
**changed** [2] - 11:14, 35:7
**changes** [1] - 10:20
**character** [1] - 44:10
**charge** [3] - 10:19, 11:9, 29:21
**charged** [39] - 11:22, 15:7, 21:23, 22:1, 22:3, 22:4, 22:6, 22:8, 22:15,

22:17, 22:19, 23:5, 23:7, 23:18, 26:10, 26:23, 27:14, 27:25, 28:20, 29:3, 29:4, 29:16, 29:25, 30:4, 30:13, 30:16, 30:18, 31:8, 31:14, 31:15, 31:19, 31:24, 31:25, 32:2, 32:12, 32:14, 33:9, 33:16
**charges** [7] - 8:2, 23:3, 27:14, 33:19, 33:22, 33:23, 62:18
**charging** [1] - 32:18
**chase** [2] - 35:10, 50:3
**child** [1] - 6:21
**choice** [2] - 52:10, 52:11
**choose** [1] - 61:14
**choosing** [1] - 60:19
**Cicale** [35] - 35:13, 35:22, 36:16, 38:19, 38:22, 39:3, 39:15, 39:17, 40:4, 40:9, 40:11, 40:12, 41:1, 41:7, 41:11, 41:25, 42:13, 43:11, 43:14, 44:5, 44:9, 44:14, 45:8, 45:11, 45:13, 46:15, 47:7, 47:20, 48:7, 48:15, 48:18, 49:8, 61:16, 61:17, 63:23
**Circuit** [12] - 13:19, 14:15, 17:5, 21:5, 21:13, 23:15, 23:25, 33:11, 50:20, 51:24, 60:15, 66:12
**Circuit's** [1] - 28:5
**circumstance** [2] - 15:25, 38:1
**circumstances** [4] - 6:22, 21:15, 59:16, 60:9
**cited** [5] - 13:17, 23:24, 26:4, 29:12, 49:5
**cites** [1] - 23:12
**Civil** [1] - 59:8
**claim** [7] - 12:17, 12:19, 13:1, 13:4, 13:6, 39:15, 47:6
**claiming** [1] - 32:11
**claims** [1] - 46:15
**clarify** [1] - 10:6
**clauses** [1] - 5:4
**clear** [4] - 19:7, 38:23, 46:9, 61:11
**clearly** [2] - 43:21, 49:6
**clerk** [2] - 65:22, 66:25
**CLERK** [2] - 3:2, 3:6
**client** [13] - 7:19, 7:21, 25:22, 26:23, 29:16, 31:14, 31:24, 38:20, 51:10, 64:8, 64:17, 72:8, 72:16
**clients** [1] - 73:3
**clients's** [1] - 54:1
**close** [3] - 45:23, 49:4, 61:9
**closer** [3] - 9:2, 20:15, 28:11
**cloth** [3] - 45:5, 45:10, 45:17
**codefendant** [2] - 31:3, 72:3
**codefendants** [1] - 24:6
**cognizant** [1] - 65:23
**coherent** [1] - 7:16
**cohorts** [1] - 18:14
**collateral** [2] - 43:19, 45:4
**collection** [2] - 29:11, 34:13
**collections** [1] - 25:18
**collective** [1] - 36:18
**collectively** [1] - 10:3

**colloquial** [1] - 19:5
**comment** [1] - 18:25
**comments** [1] - 9:22
**commerce** [5] - 27:16, 27:24, 29:18, 29:19, 29:20
**commission** [1] - 17:7
**commit** [3] - 6:25, 17:9, 30:24
**committed** [7] - 6:19, 11:16, 13:14, 14:1, 26:11, 26:17, 26:22
**committing** [1] - 25:6
**common** [1] - 26:9
**communicate** [1] - 74:17
**communication** [1] - 74:22
**company** [5] - 54:21, 54:22, 55:1, 55:3
**complete** [2] - 31:13, 62:9
**completely** [2] - 23:10, 49:2
**complex** [2] - 66:5, 76:2
**complied** [2] - 46:4, 46:7
**Computer** [1] - 2:16
**computers** [3] - 72:20, 73:18, 73:19
**concealment** [1] - 36:25
**conceded** [1] - 17:18
**concern** [2] - 53:8, 53:13
**concerns** [2] - 65:23, 69:1
**conciliatory** [1] - 35:5
**conclude** [2] - 36:4, 37:18
**concluded** [2] - 28:8, 76:7
**conclusion** [3] - 22:18, 48:5, 48:6
**concoct** [1] - 44:18
**concocted** [4] - 41:2, 45:8, 45:9, 45:11
**concocting** [1] - 45:17
**concrete** [1] - 9:13
**conduct** [9] - 7:9, 26:10, 26:14, 29:2, 29:9, 29:22, 30:18, 34:4, 38:3
**conducts** [1] - 29:23
**conference** [2] - 75:3, 76:2
**confirmed** [1] - 4:17
**conflate** [1] - 19:13
**conforms** [1] - 8:10
**confrontations** [1] - 68:25
**connected** [1] - 28:12
**Connecticut** [1] - 2:2
**connection** [10] - 6:2, 22:10, 23:16, 24:17, 26:11, 26:13, 26:15, 27:8, 34:6, 72:1
**consequence** [2] - 25:9, 44:23
**consequences** [1] - 61:19
**Consider** [1] - 72:15
**consider** [2] - 16:14, 52:11
**consideration** [1] - 65:9
**considerations** [1] - 51:18
**consistently** [1] - 36:20
**Conspiracy** [1] - 22:6
**conspiracy** [8] - 11:24, 12:1, 16:24, 22:2, 25:3, 25:18, 31:10, 32:3
**Constitutional** [2] - 37:11, 59:20
**Constitutionally** [1] - 45:1
**construction** [4] - 54:20, 54:22, 55:1
**contact** [5] - 29:2, 46:17, 71:15, 73:5,

73:7

**contain** [1] - 10:13
**contained** [1] - 16:13
**contains** [1] - 10:21
**contention** [1] - 23:13
**context** [8] - 6:5, 7:19, 12:18, 17:19, 47:2, 49:2, 56:15, 63:8
**continuance** [1] - 36:2
**continue** [1] - 28:24
**continued** [2] - 37:6, 37:12
**continues** [2] - 36:9, 76:3
**continuing** [1] - 45:2
**contours** [1] - 47:4
**control** [1] - 58:24
**conversation** [3] - 39:15, 39:18, 39:23
**conversations** [3] - 68:24, 69:3, 72:24
**convict** [1] - 40:8
**cooperating** [1] - 65:24
**corny** [1] - 60:12
**corollary** [1] - 66:8
**correct** [3] - 30:7, 62:1, 62:16
**corrected** [1] - 62:13
**correctional** [5] - 41:19, 42:12, 42:23, 43:2
**correctly** [2] - 67:24, 69:5
**Cosa** [1] - 20:3
**Counsel** [2] - 3:6, 66:24
**counsel** [7] - 17:17, 20:20, 34:9, 36:6, 70:22, 73:15, 74:17
**count** [20] - 6:2, 7:18, 8:3, 8:4, 16:20, 22:1, 22:2, 22:5, 22:6, 22:10, 23:2, 23:7, 28:9, 29:3, 29:7, 30:5, 31:14, 32:13, 32:15, 34:3
**Count** [6] - 12:6, 19:7, 22:4, 22:19, 29:9
**Counts** [5] - 19:8, 22:9, 23:5, 24:12, 24:17
**counts** [25] - 6:3, 21:12, 21:19, 21:22, 21:25, 22:8, 22:9, 22:18, 22:22, 23:1, 23:18, 24:12, 24:21, 25:3, 25:24, 25:25, 27:21, 27:25, 29:17, 30:3, 30:8, 32:1, 33:9, 33:10
**county** [1] - 54:13
**couple** [2] - 50:23, 63:9
**courageous** [1] - 59:7
**course** [11] - 22:6, 28:18, 37:23, 38:5, 43:8, 45:8, 52:24, 54:1, 58:7, 58:20, 74:24
**Court** [103] - 2:12, 2:13, 6:1, 6:5, 6:14, 8:3, 9:5, 9:14, 12:2, 12:12, 12:17, 13:8, 13:20, 14:8, 14:23, 15:12, 20:25, 26:8, 28:15, 33:20, 34:5, 35:8, 35:25, 36:3, 36:6, 36:12, 36:14, 36:21, 36:23, 36:24, 37:2, 37:3, 37:9, 37:13, 37:14, 37:15, 37:17, 37:20, 37:23, 38:4, 38:8, 38:12, 38:13, 39:8, 39:16, 39:22, 40:7, 40:20, 40:25, 41:3, 41:18, 41:22, 42:5, 42:18, 43:16, 44:4, 44:20, 46:7, 47:13, 49:14, 50:2, 50:11, 50:13, 50:18, 50:24, 51:1, 52:10, 53:10, 53:13, 53:25, 54:2,

54:4, 55:19, 55:21, 56:11, 58:16, 58:25, 60:1, 61:13, 63:8, 63:22, 65:5, 65:10, 65:13, 65:17, 65:22, 66:2, 66:11, 66:12, 66:22, 67:11, 67:12, 67:15, 68:6, 68:21, 69:5, 71:8, 71:25, 72:6, 75:18
**court** [6] - 4:16, 6:4, 46:3, 65:22, 66:23, 70:6
**COURT** [130] - 1:1, 3:5, 3:12, 3:14, 3:18, 3:21, 3:25, 4:3, 4:7, 4:10, 4:13, 4:23, 5:8, 5:13, 5:16, 5:20, 8:7, 9:17, 10:1, 10:4, 10:9, 10:13, 10:16, 10:21, 10:25, 11:4, 11:18, 12:10, 14:21, 15:14, 15:24, 16:3, 16:7, 16:16, 16:23, 17:14, 17:22, 18:1, 20:9, 20:18, 20:21, 20:24, 21:4, 21:7, 21:9, 24:14, 24:17, 24:23, 25:2, 25:8, 27:2, 27:8, 28:16, 28:18, 28:21, 31:6, 31:12, 31:23, 32:22, 32:25, 33:2, 33:5, 34:17, 34:21, 35:1, 35:3, 38:9, 45:25, 47:15, 48:1, 49:9, 49:11, 49:18, 49:21, 49:23, 52:3, 52:5, 54:8, 55:13, 55:15, 57:6, 57:25, 58:12, 61:22, 62:15, 62:20, 63:5, 63:17, 64:6, 64:11, 64:13, 64:15, 64:17, 64:21, 65:3, 65:9, 67:21, 68:8, 68:13, 68:19, 69:7, 69:11, 69:17, 69:20, 70:1, 70:4, 70:7, 70:9, 70:17, 71:9, 71:11, 71:14, 71:18, 71:21, 72:8, 72:13, 73:2, 73:9, 73:23, 74:2, 74:7, 74:11, 75:2, 75:9, 75:11, 75:15, 75:19, 75:22, 75:24, 76:1
**Court's** [11] - 4:25, 9:13, 14:11, 26:3, 34:23, 39:5, 43:21, 58:17, 60:4, 64:19, 71:6
**courthouse** [1] - 52:19
**Courthouse** [1] - 1:4
**Courts** [1] - 50:23
**courts** [2] - 65:12, 66:11
**coverage** [1] - 53:3
**credibility** [2] - 40:5, 40:24
**credible** [6] - 33:17, 40:15, 40:22, 41:1, 41:6, 43:25
**credit** [5] - 23:6, 25:18, 29:11, 32:10, 34:13
**credulity** [1] - 53:6
**crime** [17] - 7:1, 7:6, 7:17, 22:11, 31:9, 31:25, 32:1, 32:5, 32:6, 40:8, 50:6, 50:8, 50:15, 54:23, 55:2
**crimes** [6] - 18:20, 25:15, 26:17, 32:19, 32:20, 32:21
**criminal** [8] - 8:10, 26:10, 26:14, 26:22, 29:2, 29:22, 31:20, 59:23
**criminally** [1] - 22:25
**critical** [1] - 55:6
**cross** [6] - 38:15, 43:17, 43:18, 44:7, 44:10, 49:7
**cross-examination** [5] - 38:15, 43:17, 43:18, 44:7, 49:7
**cross-examine** [1] - 44:10
**crucial** [1] - 44:25
**crystallize** [3] - 38:24, 40:13, 42:8
**current** [1] - 15:25

**customarily** [1] - 53:12
**cut** [3] - 35:10, 37:8, 50:3
**CW-1** [8] - 42:1, 42:12, 42:13, 43:8, 44:1, 44:2, 45:14, 46:16
**CW-2** [2] - 42:2, 43:9

# D

**daily** [1] - 52:25
**danger** [1] - 37:10
**dangerous** [2] - 50:10, 59:19
**date** [1] - 11:13
**DAVID** [1] - 1:20
**David** [1] - 3:16
**days** [5] - 53:2, 70:12, 71:1, 75:4
**deadline** [3] - 67:25, 68:5, 68:17
**deal** [5] - 9:14, 18:8, 43:20, 54:10, 56:8
**dealing** [6] - 18:3, 45:5, 52:24, 55:15, 55:17, 56:15
**dealt** [1] - 71:3
**death** [3] - 40:18, 55:18, 56:7
**December** [3] - 12:24, 36:3
**decide** [2] - 15:12, 15:21
**decided** [3] - 12:23, 14:15, 23:25
**decision** [10] - 6:8, 15:10, 23:22, 23:23, 24:3, 26:5, 29:13, 49:24, 55:21, 57:14
**decisions** [4] - 38:16, 45:1, 56:12, 60:16
**declined** [1] - 60:23
**deemed** [2] - 26:24, 76:2
**defendant** [10] - 4:4, 6:22, 17:9, 22:14, 24:5, 39:9, 46:9, 46:11, 54:19, 59:19
**Defendant** [6] - 1:20, 2:1, 2:5, 2:9, 11:9, 11:10
**defendant's** [3] - 19:9, 19:24, 59:20
**defendants** [18] - 7:22, 15:6, 21:12, 21:20, 26:10, 29:25, 30:2, 38:23, 50:9, 53:15, 61:3, 61:6, 62:7, 62:12, 63:2, 72:2, 72:20, 73:17
**Defendants** [2] - 1:8, 62:25
**defendants's** [1] - 57:12
**defense** [15] - 17:17, 20:19, 36:6, 38:14, 38:15, 45:7, 47:3, 49:6, 49:7, 52:6, 54:9, 72:17, 74:7, 74:16, 74:19
**defenses** [1] - 15:8
**defer** [3] - 11:3, 15:1, 15:12
**DeFilippo** [2] - 11:25, 22:23
**definitive** [1] - 20:14
**degree** [2] - 13:22, 53:1
**deleted** [1] - 10:18
**deliberately** [1] - 55:9
**deliberation** [4] - 57:15, 58:2, 58:5, 65:15
**deliberations** [2] - 58:4, 67:6
**delineated** [1] - 59:15
**demonstrate** [1] - 17:15
**demonstrative** [2] - 65:15, 66:16
**denial** [1] - 43:7

**denials** [1] - 44:6
**denied** [2] - 12:25, 13:4
**denies** [2] - 41:11, 43:15
**deny** [3] - 28:15, 37:17, 44:6
**denying** [1] - 45:2
**department** [1] - 73:6
**deprived** [2] - 54:24, 55:10
**describe** [1] - 8:22
**described** [2] - 24:1, 46:15
**describes** [1] - 42:14
**designated** [3] - 44:16, 57:3, 57:6
**designation** [1] - 76:3
**desire** [1] - 19:17
**destroyed** [2] - 65:22, 67:9
**detail** [1] - 41:3
**detailed** [2] - 20:15, 44:3
**details** [2] - 46:11
**determination** [3] - 15:4, 18:21, 27:19
**determining** [1] - 33:22
**difference** [1] - 10:24
**different** [9] - 10:7, 16:3, 27:5, 35:19, 39:10, 45:20, 47:1, 60:17, 68:25
**digest** [2] - 69:19, 69:20
**dire** [1] - 55:16
**direct** [1] - 59:4
**directed** [2] - 66:24, 67:15
**direction** [2] - 60:17, 69:21
**directly** [1] - 37:13
**discharged** [1] - 58:3
**disclose** [1] - 61:14
**disclosed** [2] - 46:13, 56:9
**disclosing** [1] - 56:2
**disclosure** [2] - 37:19, 67:25
**disclosures** [1] - 19:23
**discovery** [3] - 35:13, 37:17, 72:23
**discretionary** [1] - 15:10
**discuss** [9] - 5:2, 5:9, 5:10, 6:1, 21:1, 43:3, 64:22, 73:4, 74:13
**discussed** [2] - 7:20, 70:22
**discussion** [3] - 20:12, 48:13, 60:2
**disfavored** [2] - 51:5, 51:21
**disinclined** [1] - 29:23
**disk** [2] - 72:18, 73:4
**disks** [5] - 68:23, 72:2, 72:3, 73:14, 73:21
**dismiss** [7] - 6:2, 9:22, 9:23, 10:8, 16:9, 19:8, 19:22
**dismissal** [2] - 12:5, 12:6
**dismissed** [1] - 17:3
**disparate** [7] - 26:13, 26:22, 29:2, 29:21, 31:4, 31:17, 33:8
**disposal** [1] - 66:1
**disseminated** [1] - 65:19
**dissension** [1] - 48:15
**distinguish** [1] - 14:4
**distinguished** [1] - 39:7
**distinguishes** [1] - 39:4
**district** [7] - 26:4, 40:17, 50:23, 51:3, 53:13, 66:11, 66:23

**DISTRICT** [2] - 1:1, 1:1
**District** [4] - 1:12, 4:17, 66:15, 66:24
**docket** [2] - 12:15, 12:22
**Docket** [2] - 3:4, 12:23
**document** [4] - 24:11, 41:17, 42:18, 42:20
**documents** [9] - 35:22, 37:1, 37:6, 37:12, 37:19, 38:4, 41:17, 42:10, 73:4
**Dominic** [1] - 47:20
**Dominick** [2] - 47:6, 49:7
**Donato** [12] - 2:5, 3:3, 4:1, 4:3, 4:5, 5:3, 9:24, 16:10, 19:8, 19:16, 67:23, 71:24
**DONATO** [2] - 1:7, 4:2
**Donato's** [2] - 6:3, 19:20
**done** [8] - 16:1, 20:1, 47:25, 50:16, 58:1, 64:13, 64:15, 71:2
**dozens** [1] - 65:5
**dramatically** [1] - 51:5
**drastic** [3] - 51:8, 51:21, 59:14
**draw** [2] - 32:1, 61:5
**drawn** [1] - 64:1
**dropped** [3] - 11:10, 11:12
**due** [5] - 7:5, 9:9, 17:10, 24:6, 39:4
**duration** [1] - 65:11
**during** [4] - 53:2, 58:4, 59:7, 65:14

## E

**e-mail** [1] - 74:18
**easier** [2] - 4:21, 75:13
**East** [2] - 1:16, 2:13
**EASTERN** [1] - 1:1
**education** [1] - 54:14
**effect** [5] - 6:11, 20:13, 36:1, 39:24, 57:18
**effective** [1] - 66:19
**efficiency** [1] - 5:18
**effort** [3] - 71:5, 71:6, 72:15
**eight** [3] - 52:25, 54:2, 65:2
**eight-week** [2] - 52:25, 54:2
**Eighth** [1] - 2:9
**either** [6] - 15:3, 17:7, 18:4, 22:4, 22:5, 68:5
**either/or** [1] - 52:10
**elected** [1] - 32:15
**element** [1] - 27:13
**elements** [1] - 54:15
**elicit** [2] - 8:24, 55:20
**eliminate** [1] - 60:25
**empanelment** [1] - 59:13
**emphasize** [1] - 65:16
**employ** [2] - 45:16, 66:22
**employed** [1] - 66:10
**employees** [1] - 46:19
**employment** [2] - 55:5, 55:6
**end** [11] - 17:3, 43:2, 44:14, 47:7, 47:21, 48:12, 66:7, 66:17, 66:21, 67:4, 72:13

**enforcement** [3] - 52:18, 52:22, 59:21
**engaged** [2] - 19:11, 41:7
**enhance** [1] - 18:18
**enlighten** [1] - 33:5
**enlisted** [3] - 7:7, 39:20, 61:17
**enlisting** [1] - 43:11
**entered** [1] - 37:3
**enterprise** [21] - 7:9, 13:3, 13:12, 13:14, 14:3, 17:2, 17:8, 17:10, 17:12, 18:3, 18:5, 18:15, 19:11, 23:9, 26:7, 27:15, 27:16, 27:24, 29:6, 30:1, 34:12
**enterprise's** [1] - 27:24
**entire** [6] - 34:4, 38:13, 38:14, 40:1, 45:5, 47:21
**entitled** [3] - 25:23, 43:13, 53:15
**entrance** [1] - 19:10
**entry** [1] - 19:20
**enumerated** [1] - 22:7
**epiphany** [1] - 5:17
**especially** [1] - 38:7
**ESQUIRE** [1] - 1:15
**establish** [4] - 17:12, 19:16, 27:21, 28:11
**established** [2] - 21:14, 30:10
**establishing** [1] - 17:7
**et** [2] - 50:10, 58:18
**etcetera** [1] - 43:22
**ethnic** [1] - 54:14
**evaluate** [1] - 67:7
**eve** [3] - 57:15, 58:1, 60:19
**event** [3] - 35:24, 53:23, 72:5
**events** [1] - 28:11
**Evidence** [1] - 40:22
**evidence** [16] - 6:14, 12:21, 16:15, 17:1, 17:4, 24:11, 27:17, 27:22, 40:15, 41:1, 41:7, 43:25, 50:17, 51:17, 51:19, 63:22
**evidentiary** [3] - 14:12, 16:12, 46:11
**evolves** [1] - 24:2
**exact** [2] - 48:4, 49:5
**exactly** [1] - 8:16
**exaggeration** [1] - 48:10
**examination** [5] - 38:15, 43:17, 43:18, 44:7, 49:7
**examine** [2] - 22:18, 44:10
**example** [6] - 25:16, 30:24, 43:1, 55:9, 61:11, 68:23
**examples** [3] - 48:9, 48:10, 48:24
**exceeding** [1] - 65:11
**except** [1] - 10:22
**exception** [2] - 51:5, 51:22
**exceptional** [1] - 60:8
**excerpts** [1] - 64:1
**exclusively** [1] - 35:17
**Excuse** [1] - 28:1
**exercise** [2] - 14:24, 55:11
**exhaustive** [1] - 58:18
**exhibits** [2] - 66:16, 68:18
**exist** [3] - 18:3, 43:23, 74:23

**existence** [5] - 27:15, 27:21, 29:5, 29:6, 29:8
**exists** [1] - 31:5
**expect** [2] - 20:6, 74:24
**expected** [1] - 20:2
**expects** [2] - 19:16, 65:5
**experience** [1] - 14:24
**expert** [4] - 8:11, 9:11, 19:23, 69:9
**explaining** [1] - 20:2
**explanation** [3] - 18:6, 52:23, 53:1
**expressed** [1] - 19:14
**extensions** [2] - 23:6, 32:10
**extensive** [1] - 55:18
**extensively** [2] - 50:11, 50:13
**extent** [2] - 54:9, 67:14
**extortion** [3] - 32:9, 34:13, 55:3
**extortionate** [1] - 23:5
**extortions** [1] - 25:18
**extremely** [2] - 66:3, 67:12

## F

**F.3d** [1] - 23:25
**F.Supp.2d** [1] - 66:14
**fabricated** [1] - 45:17
**fabrication** [1] - 45:5
**face** [7] - 24:8, 26:8, 26:20, 30:6, 30:7, 33:21
**faced** [1] - 60:22
**fact** [14] - 14:2, 17:1, 18:20, 23:22, 29:4, 29:13, 29:20, 30:3, 30:8, 31:1, 31:17, 35:16, 43:12, 72:1
**factor** [2] - 50:20, 50:21
**factors** [3] - 50:22, 51:9, 54:5
**facts** [11] - 14:4, 31:13, 38:13, 38:14, 40:21, 41:3, 41:4, 51:13, 51:14, 63:20
**factually** [1] - 33:17
**failed** [1] - 28:4
**fails** [1] - 47:8
**fair** [4] - 49:3, 53:15, 65:7, 72:22
**fairly** [1] - 48:5
**fall** [1] - 35:12
**falsely** [2] - 37:24, 38:2
**familiar** [3] - 41:3, 47:10, 70:6
**familiarity** [1] - 34:23
**family** [17] - 7:1, 7:4, 7:17, 7:18, 18:14, 18:19, 19:19, 19:20, 20:4, 20:6, 27:22, 29:7, 29:8, 30:2, 33:15, 62:11
**fashioned** [1] - 56:1
**faster** [1] - 44:21
**February** [6] - 35:19, 36:7, 36:13, 36:16, 41:10, 42:6
**Federal** [1] - 8:14
**federal** [2] - 16:25, 29:19
**feet** [1] - 51:12
**fellow** [1] - 61:18
**few** [2] - 9:22, 49:21
**file** [5] - 14:19, 19:24, 20:11, 37:6, 67:15

**filed** [6] - 9:22, 10:8, 11:21, 14:13, 14:18, 37:4
**filing** [5] - 11:21, 20:7, 36:25, 37:12, 68:11
**final** [2] - 47:11, 48:7
**finally** [2] - 23:6, 67:9
**findings** [1] - 17:18
**fine** [7] - 10:1, 10:4, 20:18, 29:6, 68:19, 70:1, 70:3
**Fine** [1] - 74:2
**finish** [1] - 40:3
**first** [16] - 6:1, 11:20, 12:21, 16:8, 21:24, 36:21, 38:20, 39:12, 42:13, 49:12, 52:19, 54:4, 65:17, 73:4, 75:20
**First** [2] - 5:2, 60:15
**fit** [1] - 50:17
**fits** [1] - 50:18
**five** [4] - 50:20, 50:21, 50:22, 68:11
**five-factor** [2] - 50:20, 50:21
**flip** [2] - 18:10
**focus** [5] - 33:23, 35:14, 38:21, 38:23, 51:24
**focused** [2] - 20:2, 20:11
**followed** [1] - 56:10
**follows** [1] - 56:23
**force** [2] - 31:18, 46:10
**foreclose** [1] - 6:8
**forewarn** [1] - 66:25
**form** [3] - 13:23, 16:25, 53:23
**forth** [5] - 19:15, 19:25, 46:6, 46:13, 58:8
**forward** [2] - 63:10, 63:24
**foundation** [1] - 59:22
**four** [4] - 15:6, 57:16, 62:7, 68:11
**fraility** [1] - 65:9
**Frank** [1] - 59:9
**frankly** [3] - 13:17, 14:13, 36:22, 40:11, 55:23, 59:11
**Frankly** [2] - 14:22, 58:22
**free** [1] - 53:16
**Friday** [4] - 70:13, 70:15, 70:18
**Fridays** [1] - 70:6
**friend** [1] - 59:10
**front** [1] - 12:16
**fulfill** [1] - 41:12
**fulfilled** [1] - 37:19
**full** [1] - 14:12
**fully** [3] - 19:16, 47:10, 63:1
**fulsome** [1] - 55:25
**fundamentally** [2] - 25:14, 59:24
**funny** [2] - 70:8, 70:9
**furnished** [1] - 8:12

## G

**gaining** [1] - 19:10
**gambling** [6] - 10:19, 23:9, 25:18, 29:10, 32:9, 34:12
**game** [1] - 47:7

**GARAUFIS** [1] - 1:11
**general** [1] - 20:3
**generally** [1] - 27:12
**Genovese** [1] - 7:1
**genuinely** [1] - 51:6
**germane** [1] - 55:21
**GI** [1] - 70:24
**Given** [1] - 9:3
**given** [13] - 9:4, 9:5, 12:5, 36:10, 40:10, 41:17, 43:21, 47:16, 52:10, 52:11, 56:23, 58:17, 69:19
**glib** [1] - 7:12
**glue** [4] - 26:7, 29:14, 29:21, 31:21
**GOLDBERG** [27] - 1:17, 3:8, 9:19, 10:12, 10:15, 10:17, 10:23, 11:6, 15:16, 16:1, 46:2, 49:14, 60:14, 60:22, 62:16, 62:21, 63:13, 65:1, 65:8, 67:18, 68:4, 68:10, 68:14, 70:3, 73:24, 74:6, 74:15
**Goldberg** [3] - 3:8, 9:18, 15:15, 46:1, 47:22, 48:4, 64:23, 71:14, 73:23
**Goldberg's** [2] - 6:11, 7:3
**Government** [76] - 1:15, 3:9, 5:6, 6:17, 7:15, 7:23, 8:12, 8:19, 10:2, 13:10, 13:20, 15:4, 19:6, 19:9, 19:15, 19:23, 19:25, 21:17, 23:12, 26:5, 26:19, 27:12, 27:14, 27:23, 28:2, 29:5, 29:18, 32:15, 33:10, 33:20, 34:9, 35:20, 36:1, 36:4, 36:12, 37:6, 37:14, 37:18, 37:20, 38:10, 38:11, 39:1, 40:16, 40:17, 40:23, 40:25, 42:16, 43:16, 44:16, 46:4, 46:10, 46:12, 47:24, 50:12, 50:16, 50:22, 53:18, 54:18, 55:10, 61:14, 62:1, 62:14, 67:18, 68:8, 68:24, 70:2, 70:22, 71:5, 72:1, 72:7, 72:23, 73:5, 73:15, 74:5
**Government's** [20] - 5:11, 6:20, 6:24, 8:11, 8:21, 16:11, 36:8, 36:18, 38:3, 38:7, 41:9, 41:13, 43:23, 44:1, 45:16, 50:5, 50:19, 62:5, 63:20, 64:24
**Grand** [1] - 33:24
**grand** [1] - 47:6
**grant** [1] - 50:14
**granted** [2] - 58:11, 59:9
**granting** [1] - 36:2
**great** [3] - 44:6, 54:10, 56:8
**greater** [1] - 18:2
**greed** [1] - 44:15
**grievance** [1] - 14:2
**grievances** [2] - 13:15, 16:18
**grounds** [1] - 13:3
**growing** [1] - 19:18
**guard** [1] - 44:19
**guess** [1] - 5:9
**guilty** [6] - 6:22, 30:24, 30:25, 31:2
**guy** [8] - 18:7, 40:4, 44:9, 44:15, 47:22, 59:6, 64:3, 64:4

## H

**handful** [1] - 41:17

**Handing** [1] - 68:14
**handle** [2] - 15:18, 55:23
**handled** [1] - 71:18
**happenstance** [1] - 36:22
**happy** [2] - 5:23, 11:7
**hard** [2] - 23:9, 72:18
**hardly** [1] - 47:23
**harm** [1] - 54:8
**hasten** [1] - 69:16
**hated** [1] - 39:18, 45:12
**Haven** [1] - 2:2
**health** [1] - 70:23
**hear** [4] - 5:23, 35:4, 36:7, 68:8
**heard** [5] - 6:15, 35:3, 39:17, 53:9, 53:10
**hearing** [1] - 73:25
**hearsay** [1] - 68:25
**heart** [1] - 45:3
**heaven** [1] - 44:12
**held** [3] - 17:5, 33:11
**help** [4] - 11:1, 39:20, 44:15, 44:17
**helpful** [3] - 57:21, 67:12, 69:10
**heroes** [1] - 59:8
**highlight** [1] - 71:13
**highlighting** [1] - 74:18
**highly** [1] - 25:11
**himself** [2] - 44:15, 44:17
**history** [3] - 20:3, 20:4, 51:17
**hit** [1] - 48:21
**hold** [2] - 20:12, 29:15
**holds** [1] - 40:8
**holidays** [3] - 70:10, 70:11, 70:12
**homicide** [5] - 6:7, 6:14, 6:16, 6:25, 7:2
**honest** [1] - 47:22
**Honor** [84] - 3:10, 3:13, 3:20, 4:2, 4:9, 4:11, 5:1, 5:19, 5:22, 5:24, 6:13, 9:3, 11:19, 12:15, 12:25, 13:4, 13:16, 13:25, 14:4, 14:9, 14:16, 15:1, 15:11, 15:21, 16:5, 16:9, 16:14, 16:21, 17:18, 19:21, 20:20, 21:8, 21:21, 22:8, 22:12, 24:8, 26:18, 27:4, 27:7, 27:13, 29:24, 30:7, 30:13, 30:17, 30:20, 32:23, 33:1, 33:25, 34:19, 46:2, 47:2, 47:9, 49:10, 49:20, 49:25, 52:8, 56:24, 57:10, 58:14, 60:14, 61:4, 62:8, 62:16, 63:1, 65:8, 67:18, 67:19, 69:12, 69:23, 70:20, 71:7, 71:10, 71:17, 71:23, 72:22, 73:8, 74:6, 74:8, 74:10, 74:15, 74:16, 75:12, 75:17
**Honor's** [2] - 27:19, 74:25
**HONORABLE** [1] - 1:11
**hope** [1] - 35:4
**hopefully** [1] - 5:16
**hoping** [1] - 34:22
**horizontal** [1] - 13:3
**horizontally** [1] - 17:13
**hour** [1] - 45:21
**human** [1] - 65:10
**hurting** [1] - 45:12

**hypothetical** [1] - 54:17

---

**I**

**idea** [3] - 48:21, 58:12, 58:25
**identical** [1] - 67:2
**identicality** [1] - 31:7
**identifies** [1] - 47:10
**identifying** [1] - 54:16
**identities** [2] - 36:20, 42:4
**identity** [1] - 20:5
**ignore** [1] - 60:10
**illustrations** [1] - 48:13
**imagine** [1] - 23:10
**impact** [4] - 11:20, 27:16, 27:24, 37:5
**impartially** [1] - 58:10
**implicating** [1] - 59:20
**importance** [1] - 19:19
**important** [3] - 37:11, 40:6, 65:23
**importantly** [2] - 42:21, 45:9
**impose** [1] - 52:13
**imprisonment** [1] - 15:7
**improper** [1] - 57:24
**inadmissible** [1] - 24:5
**inadvertently** [1] - 11:13
**inappropriate** [2] - 9:12, 16:13
**incentive** [1] - 44:6
**incident** [8] - 40:10, 42:15, 43:19, 44:8, 45:4, 45:13, 45:15, 48:24
**include** [2] - 41:18, 73:21
**included** [2] - 28:8, 31:17
**including** [4] - 17:6, 24:12, 40:18, 55:5
**inconsistent** [3] - 13:22, 13:24, 15:8
**increasing** [1] - 19:11
**Indeed** [1] - 58:8
**INDELICATO** [2] - 1:6, 3:20
**Indelicato** [10] - 2:1, 3:3, 3:19, 3:23, 11:9, 11:22, 12:1, 16:10, 19:17, 70:23
**Indelicato's** [1] - 18:22
**independent** [3] - 38:5, 43:21, 49:5
**indicated** [5] - 9:5, 46:24, 47:8, 62:22, 62:23
**indicates** [2] - 63:2, 72:24
**indicted** [1] - 28:9
**indictment** [25] - 7:19, 8:5, 10:8, 12:8, 13:23, 14:7, 16:13, 21:21, 21:24, 22:19, 22:21, 23:1, 23:19, 26:9, 26:17, 26:20, 26:21, 30:6, 30:8, 31:22, 33:21, 33:23, 34:5, 34:8, 34:10
**indictments** [1] - 21:25
**individual** [5] - 19:18, 23:3, 54:11, 57:3, 57:4
**individual's** [1] - 55:4
**individualized** [1] - 62:11
**individually** [1] - 56:7
**individuals** [5] - 20:5, 22:16, 26:6, 33:11, 55:17
**infer** [1] - 53:7
**inference** [1] - 61:6

**inferences** [1] - 33:21
**infiltrated** [1] - 54:23
**inform** [2] - 69:14, 71:7
**information** [18] - 35:23, 38:22, 42:10, 44:20, 46:17, 54:16, 54:25, 55:4, 55:6, 55:10, 55:24, 56:2, 56:8, 56:11, 58:19, 58:20, 59:5, 66:6
**informational** [2] - 59:25, 70:20
**informed** [1] - 56:12
**initial** [3] - 21:3, 23:14, 34:2
**initials** [1] - 42:3
**inmate** [2] - 46:14, 46:15
**inmate's** [1] - 46:17
**inmates** [1] - 43:10
**innocence** [1] - 59:21
**inordinate** [1] - 15:1
**inspection** [1] - 67:4
**instance** [1] - 24:2
**instead** [1] - 58:6
**institute** [1] - 65:10
**instruct** [1] - 61:5
**instructions** [2] - 13:25, 24:13
**insure** [4] - 38:6, 38:12, 53:13, 57:23
**integrity** [3] - 38:6, 38:12, 44:24
**intend** [2] - 5:23, 8:23
**intended** [4] - 10:16, 37:5, 60:4, 68:24
**intends** [2] - 8:16, 65:10
**intensity** [1] - 58:18
**intent** [2] - 19:15, 71:25
**intentionally** [1] - 47:23
**interested** [1] - 56:16
**interfere** [1] - 51:20
**interview** [1] - 43:13
**interviewed** [1] - 56:6
**introduce** [1] - 68:25
**introductory** [1] - 21:11
**intrusive** [2] - 53:11, 54:1
**invest** [1] - 36:5
**investigate** [4] - 41:14, 41:15, 46:11, 46:12
**investigation** [4] - 36:5, 44:25, 55:2
**investigative** [1] - 42:22
**invited** [2] - 39:8, 74:16
**involve** [1] - 66:19
**involved** [2] - 31:20, 45:6
**involvement** [1] - 7:23
**involving** [2] - 22:22, 22:24
**Iowa** [1] - 66:15
**isolated** [1] - 48:24
**issue** [29] - 7:21, 14:7, 14:10, 14:12, 14:17, 21:19, 34:21, 35:11, 35:12, 36:17, 36:19, 36:21, 37:4, 37:7, 38:24, 39:6, 39:8, 40:13, 40:14, 40:20, 42:8, 43:3, 50:19, 52:6, 53:17, 54:4, 61:23, 67:19, 67:20
**issues** [13] - 13:5, 14:14, 25:12, 27:4, 64:9, 68:7, 75:4
**item** [4] - 8:9, 10:17, 10:22, 64:22
**items** [3] - 41:23, 41:24, 45:21

**itself** [2] - 8:1, 34:6

## J

**January** [1] - 12:14
**Jeffrey** [1] - 3:8
**JEFFREY** [1] - 1:17
**jerk** [2] - 64:3, 64:4
**Jewish** [3] - 70:9, 70:11, 70:12
**job** [1] - 28:21
**John** [2] - 3:16, 19:23
**JOHN** [1] - 1:20
**Johnson** [3] - 59:9, 66:14, 73:16
**join** [2] - 25:24, 31:4
**joinder** [3] - 22:13, 23:13, 23:17
**joined** [6] - 5:5, 21:19, 21:20, 26:17, 33:12, 52:13
**joining** [1] - 5:4
**joins** [1] - 51:13
**joint** [1] - 24:4
**Judge** [24] - 1:12, 4:16, 4:17, 10:12, 15:16, 17:24, 20:23, 26:5, 27:1, 28:5, 28:7, 28:17, 29:12, 34:22, 35:8, 35:18, 43:21, 45:19, 49:12, 50:1, 60:23, 63:7, 70:16, 73:13
**judges** [2] - 59:7, 66:23
**judgment** [1] - 13:1
**July** [2] - 1:9, 67:16
**juries** [1] - 60:16
**juror** [6] - 54:20, 56:1, 56:13, 57:2, 57:3, 60:10
**juror's** [1] - 56:3
**jurors** [14] - 15:2, 52:17, 53:5, 56:6, 56:9, 56:19, 57:13, 59:19, 60:10, 61:5, 66:3, 66:6, 66:17, 67:12
**jurors's** [4] - 59:5, 66:9, 66:20, 67:6
**Jury** [1] - 33:24
**jury** [42] - 5:10, 13:24, 14:25, 18:16, 18:21, 40:7, 49:1, 49:11, 50:1, 50:9, 50:14, 51:7, 51:18, 51:19, 51:20, 52:11, 52:15, 52:24, 53:7, 53:14, 53:19, 54:5, 54:9, 56:15, 56:20, 56:25, 57:11, 57:15, 57:16, 57:20, 58:2, 58:10, 58:25, 59:14, 59:18, 61:24, 63:4, 65:14, 65:19, 67:5, 67:10, 74:25
**jury's** [1] - 58:5
**justice** [2] - 44:14, 62:19
**justify** [1] - 51:21

## K

**keep** [1] - 72:16
**KELLMAN** [5] - 2:9, 4:11, 73:11, 75:7, 75:13
**Kellman** [2] - 4:12, 73:9
**key** [3] - 35:11, 35:12, 40:4
**kid** [1] - 18:7
**kidnapping** [1] - 6:21

**kill** [7] - 18:7, 39:19, 39:20, 47:11, 48:8, 64:4
**killed** [4] - 45:12, 48:19, 63:10, 63:25
**killing** [1] - 64:3
**kind** [5] - 41:15, 51:21, 57:22, 58:19, 61:9
**kinds** [5] - 41:25, 42:3, 42:7, 51:17, 51:25
**King/Queen** [1] - 26:12
**Kings** [2] - 26:12, 26:16
**knowing** [1] - 56:16
**knowledge** [4] - 13:7, 57:1, 62:5, 62:6
**knows** [5] - 8:3, 37:24, 39:16, 50:11, 50:12
**Kyles** [1] - 44:25

## L

**labor** [1] - 23:20
**lack** [1] - 59:4
**laid** [2] - 34:5, 41:22
**language** [8] - 8:4, 13:9, 13:15, 13:16, 13:19, 14:6, 16:18
**larger** [1] - 15:22
**last** [8] - 23:7, 34:24, 34:25, 35:12, 52:20, 65:4, 66:18, 74:18
**late** [2] - 45:22, 74:18
**Latin** [3] - 26:11, 26:12, 26:16
**latter** [1] - 17:11
**law** [13] - 8:10, 13:17, 21:4, 21:17, 21:20, 25:23, 31:7, 46:8, 52:18, 52:22, 59:23, 63:1, 66:12
**lawyers** [3] - 42:17, 59:1, 73:18
**lay** [2] - 42:6, 45:19
**laying** [1] - 70:10
**learned** [2] - 44:13, 70:23
**least** [5] - 16:2, 35:12, 61:14, 65:4, 67:2
**leaving** [1] - 7:25
**left** [3] - 10:22, 18:21, 37:2
**legal** [1] - 73:6
**less** [5] - 32:7, 53:3, 53:11, 54:1, 57:10
**letter** [6] - 11:7, 41:10, 42:11, 42:14, 61:10, 70:10
**letters** [3] - 40:24, 72:23
**liable** [1] - 22:25
**library** [2] - 73:3, 73:19
**lies** [2] - 45:2, 59:22
**Lieutenant** [1] - 7:3
**life** [3] - 15:7, 40:8
**light** [2] - 35:23, 61:6
**likely** [4] - 15:8, 53:14, 66:18
**limine** [5] - 9:10, 19:25, 68:1, 69:8, 69:14
**limit** [2] - 9:7, 9:10
**limitation** [1] - 9:4
**limited** [5] - 8:19, 20:6, 59:15, 72:1, 72:20
**limiting** [1] - 24:13

**limits** [1] - 8:23
**line** [4] - 51:9, 51:10, 51:16, 57:9
**linked** [1] - 26:23
**list** [1] - 45:21
**listen** [1] - 57:19
**listens** [1] - 48:3
**litigation** [1] - 66:5
**live** [1] - 54:13
**LLP** [1] - 2:5
**logic** [1] - 6:8
**logical** [1] - 64:9
**look** [10] - 14:9, 14:16, 22:21, 30:7, 30:14, 33:21, 34:9, 41:20, 44:8, 47:4
**looking** [3] - 26:20, 34:8, 72:9
**looks** [3] - 21:21, 48:2, 48:3
**lost** [1] - 55:6
**lying** [1] - 61:18

## M

**mail** [1] - 74:18
**maintain** [2] - 19:10, 38:5
**major** [1] - 31:25
**man** [1] - 40:8
**MANCUSO** [2] - 1:6, 3:13
**Mancuso** [38] - 1:20, 3:3, 3:14, 3:15, 3:17, 21:2, 21:23, 22:3, 22:24, 25:5, 25:10, 27:10, 27:14, 27:25, 30:4, 38:25, 39:2, 39:14, 39:16, 39:18, 39:19, 39:20, 39:21, 39:24, 40:2, 45:10, 47:7, 47:11, 47:22, 48:6, 48:15, 48:18, 48:21, 51:10, 62:3, 62:23, 62:25
**Mancuso's** [6] - 24:18, 28:15, 30:15, 30:19, 38:20, 46:21
**manna** [1] - 44:12
**manual** [1] - 66:5
**March** [2] - 47:2, 74:16
**marijuana** [2] - 11:9, 12:1
**marshals** [2] - 53:4, 61:3
**Massino** [3] - 48:6, 48:14, 64:3
**material** [9] - 47:3, 49:6, 54:24, 63:23, 68:17, 69:13, 69:19, 72:25, 73:1
**materiality** [1] - 47:1
**materials** [3] - 64:10, 72:9, 72:10
**Matsumoto** [1] - 4:16
**Matter** [1] - 76:7
**matter** [8] - 14:6, 15:16, 21:17, 21:20, 25:23, 26:3, 36:6, 43:13
**matters** [2] - 25:13, 47:3
**MAURICE** [1] - 2:6
**Maurice** [1] - 4:4
**MDC** [4] - 71:9, 73:6, 73:15, 73:16
**mean** [16] - 25:13, 29:13, 29:18, 30:14, 32:12, 37:8, 42:8, 44:15, 44:20, 45:20, 50:1, 50:21, 60:1, 60:5, 63:6, 63:21
**meaning** [1] - 52:19
**meaningful** [2] - 41:15, 72:17
**means** [1] - 20:10
**measure** [2] - 51:8, 59:14

**measures** [2] - 58:3, 61:1
**media** [1] - 53:3
**medical** [1] - 70:25
**meet** [2] - 26:16, 64:17
**meeting** [1] - 74:11
**meetings** [2] - 72:3, 72:6
**meets** [1] - 4:25
**members** [8] - 7:6, 7:17, 13:13, 18:19, 26:16, 29:14, 54:11, 62:10
**membership** [3] - 26:6, 30:2, 50:16
**memoranda** [1] - 42:22
**memorandum** [1] - 21:18
**memories** [2] - 66:4, 66:20
**memory** [1] - 65:10
**mentioned** [4] - 11:12, 18:25, 66:10, 68:23
**mentioning** [1] - 46:14
**mentor** [1] - 59:10
**mere** [1] - 29:13
**Merkl** [4] - 3:8, 9:19, 15:17, 16:4
**MERKL** [19] - 1:17, 3:11, 16:5, 16:8, 16:21, 17:1, 17:16, 17:24, 18:9, 20:19, 27:6, 27:12, 29:24, 30:17, 32:23, 33:1, 33:3, 33:7, 34:19
**met** [3] - 53:10, 53:19, 57:22
**method** [2] - 56:1, 57:11
**methodology** [1] - 53:25
**methods** [1] - 20:3
**MICHAEL** [1] - 1:6
**Michael** [3] - 1:20, 3:3, 47:10
**might** [13] - 9:24, 10:25, 14:23, 15:22, 16:25, 25:9, 30:23, 55:7, 56:17, 60:12, 61:25, 69:10, 74:23
**million** [1] - 48:9
**mind** [1] - 61:4
**minds** [2] - 59:5, 60:10
**mine** [1] - 72:15
**Minnesota** [1] - 66:24
**minor** [2] - 31:24, 31:25
**minutes** [1] - 69:5
**Minutes** [1] - 2:16
**misguided** [1] - 64:2
**misjoinder** [1] - 24:2
**misleads** [1] - 13:24
**misstating** [1] - 47:23
**MITCHELL** [22] - 1:20, 20:23, 20:25, 21:6, 21:8, 21:10, 24:15, 24:21, 24:25, 25:7, 25:9, 28:17, 28:19, 28:25, 30:13, 30:20, 31:11, 31:16, 32:4, 33:25, 34:18, 61:23
**Mitchell** [7] - 3:16, 5:7, 20:22, 27:2, 28:4, 30:7, 35:6
**mixed** [1] - 21:15
**moment** [5] - 21:1, 49:16, 58:16, 64:8, 73:25
**Monday** [3] - 69:25, 70:14, 75:9
**monitor** [1] - 65:25
**Montgomery** [1] - 1:22
**months** [1] - 66:18

**morning** [1] - 52:20
**most** [8] - 38:23, 42:10, 42:21, 45:9, 47:18, 56:4, 59:7, 61:11
**motion** [45] - 5:12, 6:1, 6:6, 6:11, 9:1, 9:6, 9:10, 9:22, 9:23, 10:7, 11:3, 11:20, 11:22, 12:7, 12:18, 12:25, 14:13, 14:18, 14:19, 16:9, 16:10, 18:22, 18:24, 19:25, 20:7, 20:11, 20:13, 21:1, 28:15, 37:9, 37:10, 37:16, 41:22, 42:6, 42:25, 49:13, 51:13, 52:2, 52:9, 68:11, 69:9, 69:15, 71:25, 74:25
**motions** [20] - 4:15, 5:2, 5:4, 5:5, 5:25, 9:9, 12:14, 16:8, 16:11, 19:8, 19:22, 39:6, 39:8, 64:22, 68:1, 68:22, 69:6, 69:20, 69:22
**motivated** [1] - 19:17
**motivation** [3] - 18:13, 18:15, 18:17
**motive** [5] - 6:16, 6:19, 7:21, 7:25, 18:12
**move** [2] - 5:17, 71:16
**moving** [2] - 8:21, 69:21
**MR** [132] - 3:8, 3:13, 3:16, 3:20, 3:22, 4:2, 4:4, 4:9, 4:20, 4:25, 5:9, 5:15, 5:19, 5:22, 8:8, 9:19, 9:21, 10:2, 10:5, 10:12, 10:15, 10:17, 10:23, 11:2, 11:6, 11:19, 12:11, 14:22, 15:16, 16:1, 20:17, 20:23, 20:25, 21:6, 21:8, 21:10, 24:15, 24:21, 24:25, 25:7, 25:9, 27:4, 28:17, 28:19, 28:25, 30:13, 30:20, 31:11, 31:16, 32:4, 33:25, 34:18, 34:22, 35:2, 35:5, 38:10, 46:2, 47:16, 48:2, 49:10, 49:12, 49:14, 49:16, 49:19, 49:22, 49:25, 52:4, 52:7, 54:17, 55:14, 56:22, 57:8, 58:1, 58:14, 60:14, 60:21, 60:22, 61:9, 61:23, 62:16, 62:21, 63:6, 63:13, 63:15, 63:21, 64:7, 64:12, 64:14, 64:16, 64:20, 65:1, 65:8, 67:18, 67:19, 67:22, 68:4, 68:6, 68:10, 68:14, 68:21, 69:8, 69:12, 69:18, 69:23, 70:3, 70:5, 70:8, 70:16, 70:19, 70:20, 71:10, 71:12, 71:17, 71:20, 71:22, 71:23, 72:10, 72:15, 72:22, 73:8, 73:24, 74:6, 74:8, 74:10, 74:15, 75:8, 75:10, 75:12, 75:17, 75:20, 75:23, 75:25
**MS** [22] - 3:11, 4:11, 16:5, 16:8, 16:21, 17:1, 17:16, 17:24, 18:9, 20:19, 27:6, 27:12, 29:24, 30:17, 32:23, 33:1, 33:3, 33:7, 34:19, 73:11, 75:7, 75:13
**murder** [55] - 6:2, 6:19, 6:22, 7:7, 7:8, 7:13, 7:14, 7:16, 11:14, 11:15, 11:23, 11:24, 12:18, 13:1, 14:1, 16:17, 16:24, 16:25, 17:19, 18:2, 19:3, 22:23, 24:19, 25:4, 25:17, 29:10, 31:15, 32:2, 33:14, 34:15, 35:14, 35:23, 36:17, 40:2, 41:2, 41:7, 41:25, 42:13, 43:12, 44:18, 45:6, 45:9, 45:11, 45:18, 61:16, 62:18, 62:20, 62:21, 63:9, 63:13, 63:19, 63:20, 63:22
**must** [10] - 6:4, 7:10, 7:23, 22:14, 31:7, 32:14, 32:15, 32:17, 42:23, 59:19

## N

**name** [6] - 30:15, 30:19, 46:14, 54:21, 55:5, 56:3
**Namely** [1] - 11:21
**names** [3] - 12:1, 40:19, 54:12
**Napue** [2] - 37:21, 43:22
**NAPUE** [1] - 37:21
**narrow** [1] - 14:7
**nation** [2] - 26:12, 65:13
**naturally** [1] - 39:15
**nature** [2] - 18:12, 24:1
**necessary** [4] - 53:24, 57:22, 71:16, 74:1
**need** [21] - 8:9, 8:22, 9:14, 12:12, 14:12, 15:21, 15:24, 36:11, 41:8, 45:22, 51:7, 58:9, 62:16, 63:2, 68:21, 69:20, 71:6, 72:20, 73:3, 73:21, 74:25
**needed** [2] - 55:24, 56:18
**needs** [3] - 18:21, 19:6, 71:18
**neighborhood** [1] - 54:13
**net** [1] - 34:24
**neutral** [1] - 52:23
**never** [4] - 35:3, 35:4, 63:9, 63:24
**Nevertheless** [2] - 6:13, 7:5
**NEW** [1] - 1:1
**new** [5] - 6:6, 9:9, 10:8, 65:10, 72:24
**New** [4] - 1:5, 1:16, 2:2, 2:6, 2:10, 2:14, 75:18
**news** [1] - 4:15
**newspaper** [1] - 53:3
**Next** [1] - 34:21
**next** [3] - 5:7, 74:11, 75:4
**nexus** [2] - 18:2, 29:19
**Nice** [1] - 47:18
**NICHOLAS** [1] - 1:11
**night** [2] - 52:21, 74:18
**Nobody** [1] - 64:5
**none** [2] - 22:24, 72:25
**noon** [1] - 67:16
**normally** [1] - 22:1
**Northern** [1] - 66:14
**Nostra** [1] - 20:4
**note** [8] - 6:10, 8:20, 12:12, 15:20, 17:17, 27:13, 28:4, 33:3
**Note** [1] - 66:14
**notebook** [1] - 49:17
**noted** [1] - 3:1
**notes** [1] - 66:9
**nothing** [12] - 25:13, 29:16, 31:25, 32:11, 34:9, 34:10, 34:16, 34:19, 36:19, 37:2, 46:22, 64:12
**notice** [2] - 44:5, 72:7
**notion** [2] - 33:14, 50:14
**notions** [1] - 19:14
**notwithstanding** [2] - 6:17, 38:25
**number** [13] - 12:16, 12:22, 16:3, 23:2, 56:3, 57:13, 65:12, 66:11, 66:23, 72:19,

72:20, 72:24
**Number** [5] - 3:4, 11:24, 11:25, 12:4, 12:23
**numbers** [1] - 54:12
**numerous** [1] - 17:6

## O

**o'clock** [1] - 75:24
**objection** [2] - 19:24, 20:7
**objectionable** [1] - 8:17
**objections** [6] - 67:13, 67:14, 67:15, 69:14, 74:17
**obligation** [4] - 31:6, 38:5, 43:22, 43:23
**obligations** [7] - 37:19, 37:21, 37:22, 37:23, 41:13, 46:5
**observation** [5] - 21:3, 23:14, 34:6, 52:7, 52:23
**observed** [1] - 23:15
**obstruction** [4] - 51:19, 62:4, 62:19, 62:25
**obtaining** [1] - 56:1
**obviously** [10] - 11:20, 12:4, 12:7, 12:19, 13:4, 14:22, 15:10, 23:8, 71:19, 72:25
**occasion** [1] - 44:2
**occur** [1] - 75:4
**occurred** [1] - 45:15
**occurs** [1] - 24:4
**OF** [2] - 1:1, 1:3
**offense** [1] - 47:24
**offensive** [2] - 43:1, 47:25
**offered** [1] - 24:11
**Office** [2] - 43:5, 73:20
**officer** [3] - 6:4, 41:19, 42:12
**Officer** [1] - 43:9
**officer's** [1] - 41:19
**officers** [3] - 42:23, 43:2, 65:24
**Official** [1] - 2:13
**offline** [1] - 74:22
**once** [3] - 25:2, 57:14, 65:1
**Once** [1] - 41:6
**one** [38] - 4:15, 10:22, 18:25, 19:9, 21:14, 27:10, 30:25, 31:20, 37:11, 40:9, 41:8, 42:9, 45:7, 45:23, 46:4, 46:25, 48:12, 49:19, 54:18, 55:1, 55:6, 57:2, 57:11, 57:19, 58:15, 58:21, 59:3, 59:14, 60:8, 61:3, 61:23, 64:22, 65:11, 69:4, 75:2
**One** [2] - 59:7, 62:18
**onerous** [1] - 57:11
**ones** [2] - 41:24, 53:12
**open** [1] - 51:14
**opening** [2] - 65:1, 68:12
**openings** [1] - 68:16
**opportunity** [9] - 44:17, 53:20, 53:21, 53:22, 53:25, 54:6, 69:13, 72:7, 74:20
**opposed** [4] - 16:23, 18:5, 31:9, 32:1

**opposite** [1] - 48:4
**oral** [1] - 4:14
**Orange** [1] - 2:1
**order** [19] - 4:21, 4:23, 6:25, 22:13, 29:7, 29:8, 36:2, 36:3, 37:3, 39:6, 39:7, 40:20, 47:11, 48:7, 55:7, 55:20, 55:24, 72:6
**ordered** [2] - 48:21, 70:24
**ordinary** [1] - 13:11
**organized** [8] - 7:6, 50:6, 50:8, 50:9, 50:15, 54:23, 55:2
**original** [1] - 62:3
**otherwise** [1] - 49:15
**Otherwise** [1] - 70:13
**ought** [5] - 39:25, 43:13, 43:19, 73:22, 75:2
**ourselves** [1] - 4:22
**outcome** [1] - 56:2
**outdated** [1] - 12:7
**outset** [1] - 65:16
**overcome** [1] - 58:9
**overlay** [1] - 31:13
**overview** [1] - 40:15
**own** [2] - 19:20, 72:17

## P

**p.m** [2] - 1:9, 3:1
**page** [4] - 42:11, 42:14, 59:17, 61:10
**Page** [2] - 8:21, 59:7
**pale** [4] - 42:10, 42:19, 61:11, 61:12
**papers** [33] - 6:11, 6:18, 7:3, 8:19, 8:21, 9:6, 15:19, 20:1, 28:14, 30:12, 35:9, 35:16, 35:17, 36:9, 37:10, 37:16, 39:1, 41:23, 42:6, 42:25, 46:6, 46:13, 46:24, 47:8, 49:15, 50:19, 51:12, 52:2, 52:9, 59:6, 62:22, 63:7
**Paragraph** [1] - 13:9
**paragraph** [3] - 34:11, 58:15, 59:3
**parole** [1] - 15:8
**part** [22] - 14:2, 14:13, 14:25, 16:19, 22:7, 22:15, 23:11, 24:5, 25:15, 25:25, 26:24, 27:24, 28:9, 30:9, 30:18, 32:2, 32:8, 33:12, 34:14, 35:15, 40:15, 47:18
**participant** [1] - 69:3
**participants** [1] - 8:1
**participate** [2] - 30:22, 72:16
**participated** [4] - 22:25, 31:3, 32:16, 63:3
**participating** [2] - 22:5, 23:8
**participation** [2] - 24:19, 31:9
**particular** [4] - 17:7, 17:9, 20:4, 66:21
**particularly** [2] - 55:16, 65:16
**parties** [7] - 13:18, 15:11, 55:20, 65:5, 67:5, 67:13, 67:14
**parts** [1] - 27:10
**passage** [1] - 60:17
**passed** [1] - 35:24
**passing** [1] - 35:21

**past** [1] - 14:11
**pattern** [7] - 22:7, 28:10, 29:2, 30:9, 31:5, 31:18, 32:16
**penalty** [3] - 40:18, 55:18, 56:7
**people** [10] - 7:1, 26:23, 32:2, 42:3, 43:14, 45:17, 57:14, 57:19, 57:23, 58:6
**percent** [1] - 61:20
**peremptories** [3] - 14:25, 15:17, 15:20
**peremptory** [1] - 14:20
**perhaps** [1] - 26:2
**period** [4] - 40:2, 59:8, 59:19, 71:1
**permeated** [1] - 34:4
**permission** [2] - 39:19, 72:6
**permit** [2] - 7:18, 37:24
**permutations** [1] - 15:9
**person** [9] - 31:1, 31:2, 31:8, 32:10, 39:22, 42:12, 45:10, 45:12, 47:11
**personal** [6] - 13:15, 14:2, 16:18, 18:12, 18:13
**personally** [1] - 32:4
**perspective** [2] - 38:18, 59:25
**pertaining** [1] - 19:23
**pervert** [1] - 44:14
**phone** [2] - 54:12, 56:3
**phony** [11] - 35:13, 35:23, 36:17, 41:2, 41:7, 41:25, 42:13, 43:12, 44:18, 46:19, 61:16
**photo** [1] - 66:25
**photographed** [1] - 67:3
**photographs** [7] - 65:13, 65:14, 65:21, 66:1, 66:8, 66:15, 66:17
**photos** [3] - 67:2, 67:5, 67:9
**phrase** [1] - 7:13
**physical** [1] - 56:18
**pictures** [1] - 65:18
**piece** [3] - 24:10, 54:24, 55:6
**Pizzolo** [19] - 11:14, 24:19, 25:4, 25:17, 29:10, 34:14, 40:2, 47:12, 48:8, 48:18, 62:18, 62:21, 62:23, 63:9, 63:10, 63:13, 63:18, 63:20, 63:22
**place** [6] - 16:17, 52:18, 55:5, 55:19, 58:7
**places** [2] - 19:4, 48:22
**plan** [1] - 48:7
**plane** [1] - 49:19
**planned** [1] - 64:25
**planning** [1] - 68:10
**plans** [1] - 65:13
**play** [1] - 44:9
**players** [1] - 35:19
**Plaza** [2] - 1:16, 2:13
**pleading** [1] - 62:5
**plenty** [1] - 44:8
**plot** [15] - 35:14, 35:23, 36:17, 41:2, 41:8, 41:25, 42:13, 43:12, 44:18, 45:6, 45:9, 45:11, 46:19, 61:16
**plotting** [1] - 39:19
**plus** [1] - 48:22
**point** [27] - 18:23, 20:12, 28:6, 30:17,

30:20, 30:21, 32:22, 33:10, 34:10, 34:24, 34:25, 35:21, 37:8, 39:10, 41:4, 42:17, 45:20, 46:20, 47:17, 47:21, 47:24, 48:11, 56:14, 58:3, 64:7
**point-by-point** [1] - 47:17
**pointed** [2] - 36:24, 63:21
**points** [4] - 9:20, 21:17, 33:25, 60:14
**pool** [3] - 15:4, 15:22
**position** [9] - 16:11, 17:10, 19:11, 21:13, 36:8, 37:15, 37:20, 38:4
**positions** [1] - 5:17
**possible** [5] - 7:21, 48:5, 48:8, 48:20, 56:4
**possibly** [2] - 26:24, 38:13
**post** [1] - 39:5
**posture** [1] - 39:10
**potential** [5] - 15:7, 54:20, 56:1, 56:8, 65:23
**powerful** [1] - 46:2
**practical** [1] - 37:10
**practice** [2] - 4:16, 65:12
**precisely** [1] - 24:7
**predicate** [16] - 7:10, 11:8, 11:10, 22:7, 27:20, 28:8, 29:15, 30:4, 30:14, 30:16, 30:18, 30:23, 30:25, 31:4, 31:21
**preempt** [1] - 6:21
**prejudice** [14] - 21:18, 24:1, 24:4, 25:15, 53:16, 58:17, 59:4, 59:24, 60:2, 60:6, 60:12, 61:2
**prejudiced** [3] - 36:24, 54:18, 58:19
**prejudicial** [1] - 25:12
**premature** [3] - 6:12, 12:19, 16:11
**prepared** [1] - 46:18
**preparing** [2] - 49:6, 75:1
**presence** [1] - 24:6
**present** [1] - 55:20
**presentation** [2] - 17:3, 34:2
**presented** [2] - 52:9, 66:7
**presenting** [2] - 17:15, 27:18
**preserves** [1] - 57:11
**preserving** [1] - 14:14
**press** [1] - 53:2
**presumably** [1] - 69:2
**presume** [2] - 7:23, 14:23
**presumption** [1] - 59:21
**pretense** [1] - 18:6
**pretrial** [4] - 12:13, 12:18, 39:8, 75:3
**pretty** [1] - 43:16
**prevent** [2] - 25:14, 38:1
**principal** [1] - 18:4
**principles** [1] - 51:4
**prison** [3] - 41:2, 44:18, 46:18
**privacy** [1] - 52:24
**private** [2] - 7:6, 39:23
**problem** [8] - 27:6, 56:19, 58:20, 68:20, 71:15, 73:14, 73:25, 74:3
**problems** [5] - 58:21, 70:24, 71:3, 72:21, 74:23
**procedure** [7] - 8:10, 39:10, 65:11,

65:18, 66:10, 66:22, 67:11
**proceeds** [1] - 26:18
**process** [8] - 35:9, 38:6, 38:11, 38:13, 41:9, 51:20, 58:24, 60:7
**produce** [1] - 46:22
**Produced** [1] - 2:16
**proffered** [2] - 8:11, 22:13
**prompted** [1] - 68:22
**promptly** [1] - 36:6
**prong** [1] - 17:11
**prongs** [1] - 50:18
**proof** [4] - 24:5, 25:12, 27:23, 52:12
**proper** [4] - 8:17, 14:6, 23:13, 24:7
**properly** [4] - 17:3, 21:19, 21:20, 28:9
**propose** [3] - 9:3, 9:7, 53:22
**proposed** [2] - 52:17, 54:10, 57:10
**proposition** [2] - 40:10, 58:23
**prospective** [1] - 56:6
**protected** [1] - 59:20
**protection** [6] - 51:8, 53:24, 56:18, 56:19, 57:21, 61:7
**protective** [2] - 36:2, 40:20
**prove** [14] - 7:23, 18:18, 19:6, 19:9, 26:19, 27:15, 27:19, 29:5, 29:6, 29:7, 29:8, 29:19, 48:11
**proven** [3] - 16:17, 17:7
**provide** [5] - 5:16, 56:10, 73:22
**provided** [5] - 46:16, 46:17, 46:18, 52:24, 67:5
**provides** [2] - 46:25, 49:5
**provision** [1] - 43:1
**publicly** [1] - 8:13
**punch** [1] - 57:8
**purported** [5] - 29:10, 39:18, 46:23, 63:20, 68:24
**purportedly** [2] - 39:23, 64:2
**purpose** [6] - 7:8, 7:24, 8:1, 19:5, 19:9, 57:24
**purposes** [11] - 14:14, 19:10, 19:14, 28:10, 28:13, 30:11, 33:12, 43:11, 45:11, 70:20, 76:3
**pursue** [1] - 73:1
**put** [13] - 10:20, 11:13, 24:25, 28:25, 38:4, 39:1, 39:9, 45:10, 46:22, 59:5, 59:6, 63:10, 63:24
**puts** [4] - 37:15, 37:20, 44:4, 60:9

## Q

**qualifies** [4] - 6:7, 7:7, 8:14, 66:16
**questioning** [3] - 55:18, 55:19, 58:18
**questionnaire** [2] - 74:13, 74:16
**questionnaires** [2] - 56:9, 68:14
**questions** [7] - 7:25, 18:20, 19:21, 47:13, 49:14, 60:3, 60:4
**quick** [2] - 33:25, 60:14
**quickly** [1] - 35:22
**quite** [1] - 55:23
**quote** [8] - 8:22, 52:21, 59:6, 59:10,

66:5, 66:7, 66:16, 66:21
**quotes** [1] - 53:24
**quoting** [2] - 7:3, 24:3

## R

**racketeer** [2] - 30:23, 31:2
**racketeering** [33] - 6:3, 6:23, 7:7, 7:13, 7:14, 8:2, 12:5, 17:8, 19:3, 19:4, 19:11, 23:4, 23:20, 25:2, 27:21, 28:9, 28:10, 29:3, 29:4, 30:9, 30:24, 31:1, 31:2, 31:10, 31:14, 31:19, 32:1, 32:3, 32:17, 33:8, 33:9, 33:16, 34:5
**Racketeering** [6] - 6:7, 11:11, 11:22, 11:23, 11:25, 12:4
**raise** [1] - 53:17
**raised** [1] - 13:5
**raises** [1] - 59:18
**raising** [1] - 51:11
**Randy** [2] - 47:12, 62:23
**rank** [1] - 20:5
**rat** [4] - 62:24, 63:11, 63:25, 64:5
**rather** [6] - 7:4, 9:13, 54:16, 57:12, 71:23, 72:18
**reach** [2] - 22:17, 41:6
**reached** [2] - 50:17, 65:21
**reaches** [1] - 67:10
**read** [3] - 35:8, 48:5, 72:2
**reading** [2] - 45:20, 49:3
**ready** [2] - 54:3, 74:14
**real** [1] - 37:10
**reality** [1] - 15:6
**really** [16] - 5:10, 13:7, 15:5, 18:16, 23:14, 23:19, 27:8, 27:9, 35:9, 35:14, 41:21, 45:3, 51:23, 53:19, 58:17, 60:11
**reason** [13] - 29:12, 32:14, 32:15, 32:17, 34:1, 37:25, 40:12, 45:15, 51:7, 55:12, 59:11, 60:9, 60:23
**reasonable** [1] - 20:9
**reasoning** [2] - 34:1, 34:2
**recalled** [1] - 16:19
**recalling** [1] - 36:1
**receipt** [1] - 64:9
**receive** [1] - 72:6
**received** [2] - 56:8, 72:23
**recent** [1] - 23:22
**recently** [3] - 23:23, 40:19, 70:23
**recognize** [2] - 7:20, 47:8
**recollection** [1] - 67:6
**recommends** [1] - 19:2
**reconcile** [1] - 48:21
**record** [6] - 3:7, 8:23, 10:6, 14:12, 47:23, 62:9
**recorded** [1] - 23:24
**recording** [1] - 47:9
**reduce** [2] - 60:24, 61:2
**reel** [1] - 44:21
**Reeve** [2] - 3:22, 5:6
**REEVE** [17] - 2:1, 3:22, 9:21, 10:2,

10:5, 11:2, 11:19, 12:11, 14:22, 70:20, 71:10, 71:12, 71:17, 71:20, 71:22, 72:22, 74:8

**refer** [1] - 13:11
**reference** [4] - 11:19, 14:19, 39:2, 62:12
**referred** [1] - 42:3
**refers** [1] - 48:4
**refresh** [2] - 66:4, 66:20
**regard** [7] - 8:8, 18:10, 27:17, 28:2, 33:19, 67:22, 68:23
**regarding** [8] - 6:15, 8:10, 35:23, 37:4, 39:6, 55:4, 64:9, 69:9
**regular** [1] - 70:6
**regularly** [1] - 4:16
**reject** [1] - 52:11
**rejected** [1] - 43:12
**relate** [3] - 29:9, 32:7, 32:19
**related** [14] - 7:9, 7:11, 9:23, 13:2, 17:8, 29:20, 29:22, 30:10, 33:8, 33:15, 34:3, 55:22, 72:11
**relatedness** [6] - 17:2, 17:6, 17:13, 19:14, 27:20, 33:23
**relates** [2] - 11:3, 11:24
**relation** [1] - 46:19
**relationship** [5] - 18:2, 18:18, 25:17, 25:19, 28:11
**relative** [1] - 21:18
**relatively** [1] - 31:24
**relevant** [5] - 12:19, 13:5, 38:16, 72:11, 73:1
**reliance** [1] - 19:4
**relied** [1] - 13:20
**relief** [1] - 46:25
**rely** [7] - 15:19, 18:24, 35:15, 35:16, 37:16, 39:22, 49:15
**relying** [3] - 29:24, 30:1, 30:3
**remaining** [1] - 33:16
**remark** [1] - 21:11
**remedies** [1] - 52:14
**remedy** [2] - 36:23, 52:16
**remember** [2] - 43:25, 51:4
**Remind** [1] - 68:13
**remind** [2] - 36:21, 61:5
**render** [1] - 55:7
**rendition** [1] - 44:3
**renewed** [1] - 20:14
**repeatedly** [3] - 36:20, 40:16, 40:18
**report** [1] - 36:5
**Reporter** [2] - 2:12, 2:13
**reports** [1] - 42:22
**represented** [2] - 62:2, 62:14
**request** [6] - 8:25, 15:19, 46:20, 47:17, 47:19, 61:21
**require** [5] - 15:22, 21:5, 21:6, 28:11, 72:5
**required** [2] - 9:1, 27:15
**requirement** [1] - 19:15
**requirements** [1] - 26:8

**requires** [2] - 21:16, 46:8
**requiring** [1] - 53:19
**requisite** [1] - 57:13
**reschedule** [1] - 75:2
**resemble** [1] - 50:22
**reserve** [1] - 64:21
**resolve** [2] - 56:17, 74:23
**resources** [1] - 17:12
**respect** [37] - 7:5, 12:3, 13:11, 16:21, 17:19, 17:21, 17:22, 17:25, 18:14, 18:22, 24:11, 29:18, 31:18, 33:3, 33:7, 34:8, 36:16, 36:18, 37:7, 37:21, 38:3, 38:22, 39:5, 40:2, 40:14, 41:25, 46:9, 47:6, 47:7, 47:21, 51:13, 56:20, 59:11, 62:3, 62:7, 62:11, 62:24
**respectfully** [3] - 6:18, 7:10, 8:2
**respond** [5] - 5:6, 20:8, 28:17, 33:20, 58:15
**responded** [2] - 42:17, 46:20
**Response** [1] - 70:2
**response** [2] - 36:9, 47:17
**responses** [1] - 47:17
**responsibility** [1] - 36:14
**responsive** [2] - 6:18, 39:1
**rest** [3] - 17:11, 28:14, 30:12
**result** [1] - 33:16
**retrieved** [1] - 65:22
**returned** [1] - 33:24
**review** [3] - 69:13, 73:4, 74:20
**reviewing** [1] - 9:8
**Richard** [1] - 3:22
**RICO** [21] - 14:7, 16:20, 17:13, 19:7, 19:14, 21:25, 22:2, 22:5, 24:12, 25:3, 29:3, 29:7, 29:17, 30:5, 30:10, 30:22, 32:13, 32:15, 33:13, 33:17
**rights** [1] - 57:12
**Rights** [1] - 59:8
**rings** [1] - 60:19
**RIOPELLE** [1] - 2:5
**ripe** [1] - 14:8
**rise** [2] - 31:21, 44:8
**risk** [1] - 60:24
**RMR** [1] - 2:12
**Road** [1] - 1:21
**role** [3] - 38:10, 45:9, 45:17
**RONALD** [1] - 2:12
**room** [1] - 73:17
**root** [1] - 60:7
**Rostelli** [2] - 28:6, 28:7
**round** [4] - 9:6, 68:1, 68:22, 69:6
**routinely** [1] - 61:4
**rule** [3] - 34:23, 49:5, 54:4
**Rule** [9] - 21:2, 22:12, 26:16, 28:10, 28:13, 30:11, 46:5, 46:24, 49:4
**ruled** [3] - 6:5, 12:17, 47:2
**Rules** [1] - 8:15
**rules** [1] - 9:1
**ruling** [4] - 12:13, 12:23, 14:5, 74:25
**rulings** [4] - 8:18, 12:13, 13:5, 14:11

**running** [1] - 51:2
**runs** [1] - 42:19

## S

**S-10** [3] - 10:10, 10:11, 10:20
**S-8** [4] - 10:19, 10:22, 10:24, 11:21
**S-9** [9] - 10:8, 10:13, 10:18, 10:21, 10:22, 10:24, 11:5, 13:9
**safeguard** [2] - 57:23, 58:4
**safety** [3] - 52:21, 53:8, 65:23
**salient** [1] - 55:10
**salutary** [1] - 57:18
**sanctity** [1] - 58:4
**Santamaggio's** [1] - 43:9
**Santoro** [7] - 6:6, 6:14, 11:23, 12:18, 13:1, 17:19, 22:24
**satisfied** [2] - 41:8, 41:9
**satisfy** [2] - 14:2, 26:7
**save** [1] - 73:11
**Savonne** [3] - 23:12, 23:15, 23:18, 28:5, 33:10, 34:1, 34:3
**saw** [2] - 11:7, 72:18
**scared** [1] - 48:19
**schedule** [3] - 68:2, 69:10, 70:6
**scheduled** [2] - 62:7, 68:5
**schedules** [1] - 70:11
**scheduling** [1] - 67:19
**SCHOEN** [30] - 1:20, 3:16, 4:20, 4:25, 5:9, 5:15, 5:19, 27:4, 34:22, 35:2, 35:5, 38:10, 47:16, 48:2, 49:10, 49:12, 49:16, 49:19, 49:22, 49:25, 52:4, 58:14, 61:9, 63:6, 63:15, 63:21, 70:5, 70:8, 70:16, 70:19
**Schoen** [6] - 3:16, 4:19, 47:8, 58:12, 62:2, 74:20
**scope** [1] - 8:20
**seal** [5] - 37:1, 37:4, 37:6, 37:12, 42:19
**sealed** [2] - 37:19, 38:3
**seated** [1] - 3:5
**Second** [12] - 13:19, 14:15, 17:5, 21:13, 23:15, 23:25, 28:5, 33:11, 50:20, 51:24, 60:15, 60:18
**second** [7] - 8:8, 9:6, 43:9, 48:17, 68:22, 69:6, 72:11
**secondly** [1] - 38:21
**Section** [1] - 23:9
**see** [8] - 12:10, 15:2, 21:25, 30:15, 35:23, 57:9, 58:22, 69:6
**seek** [3] - 41:23, 41:24, 42:1
**seeking** [3] - 9:10, 19:24, 21:2
**Seg** [1] - 43:10
**select** [2] - 57:14, 57:25
**selected** [2] - 41:17, 58:2
**selection** [3] - 14:25, 57:11, 57:12
**Selemy** [1] - 23:23
**semi** [1] - 56:20
**semi-sequestered** [1] - 56:20
**send** [1] - 73:21

sense [5] - 9:24, 21:24, 44:12, 56:7, 70:11
sensitive [1] - 65:25
sentence [1] - 40:9
sentencing [1] - 75:17
separate [6] - 6:15, 25:4, 27:22, 51:14, 73:19
September [2] - 68:15, 70:2
sequestered [2] - 56:20, 58:10
Sercarz [8] - 4:4, 5:2, 5:5, 5:20, 12:11, 18:25, 20:16, 74:21
SERCARZ [38] - 2:5, 2:6, 4:4, 5:22, 8:8, 20:17, 52:7, 54:17, 55:14, 56:22, 57:8, 58:1, 60:21, 64:7, 64:12, 64:14, 64:16, 64:20, 67:19, 67:22, 68:6, 68:21, 69:8, 69:12, 69:18, 69:23, 71:23, 72:10, 72:15, 73:8, 74:10, 75:8, 75:10, 75:12, 75:17, 75:20, 75:23, 75:25
Sercarz's [2] - 19:13, 60:18
series [8] - 22:16, 22:22, 23:11, 26:14, 26:24, 28:12, 32:9, 70:24
serious [4] - 32:7, 55:17, 58:23
seriously [5] - 35:9, 36:15, 36:23, 59:1, 59:2
seriousness [1] - 32:5
serve [2] - 57:16, 71:25
served [1] - 75:21
serving [1] - 57:20
set [9] - 8:23, 19:15, 19:25, 39:19, 42:10, 46:6, 46:13, 52:14, 73:17
sets [1] - 26:9
seven [3] - 42:11, 42:14, 61:10
seven-page [3] - 42:11, 42:14, 61:10
sever [1] - 23:17
several [1] - 44:2
severance [7] - 21:2, 21:6, 21:12, 21:17, 24:9, 25:23, 28:15
severances [1] - 28:3
severed [2] - 23:8, 24:20
SHEEHAN [1] - 2:1
shocking [1] - 40:10
short [1] - 72:4
shorten [1] - 49:24
shorthand [1] - 52:15
show [1] - 30:15
showed [1] - 17:1
showing [1] - 66:17
side [4] - 38:8, 38:9, 52:6, 55:7
Sifton [1] - 28:7
Sifton's [1] - 28:6
simple [1] - 16:23
Simply [1] - 46:22
simply [9] - 24:25, 25:22, 25:25, 26:2, 32:18, 33:20, 37:14, 49:3, 63:11
single [6] - 26:17, 30:16, 31:3, 39:2, 39:11, 58:7
single-witness [2] - 39:2, 39:11
sit [1] - 25:11
situation [2] - 10:7, 24:20

six [5] - 52:25, 54:2, 57:16, 65:2, 65:4
slide [1] - 18:10
slightly [1] - 47:1
soldier [1] - 7:4
solely [2] - 24:6, 45:11
solve [3] - 13:15, 16:18, 56:19
someone [9] - 18:4, 18:5, 22:17, 25:19, 30:23, 30:25, 31:19, 51:1, 55:4
Sometimes [1] - 55:19
sometimes [1] - 71:1
somewhat [1] - 21:24
son [1] - 18:7
soon [1] - 74:24
sorry [7] - 12:15, 30:21, 47:19, 57:6, 61:23, 62:17, 69:17
sort [6] - 4:21, 19:5, 25:15, 52:10, 56:18, 57:21
sought [4] - 6:25, 10:18, 36:20, 39:19
sound [1] - 60:12
sounds [1] - 68:19
South [1] - 59:7
southern [1] - 26:4
speaking [1] - 19:7
special [1] - 38:10
specific [3] - 13:8, 54:16, 62:11
Specifically [1] - 66:22
specifically [2] - 9:10, 46:20
specificity [2] - 8:25
specter [1] - 59:18
speculation [2] - 40:14, 41:4
Speedy [1] - 76:3
spitting [1] - 58:22
spoken [1] - 73:15
squarely [2] - 13:7, 33:11
squares [2] - 13:17, 13:18
stage [1] - 16:15
stand [4] - 37:25, 38:7, 43:14, 67:1
standard [2] - 22:12, 26:16
standing [1] - 35:20
stands [1] - 39:9
star [1] - 44:1
start [8] - 4:14, 5:5, 5:20, 40:2, 62:8, 65:1, 68:12, 75:1
started [1] - 4:18
starting [1] - 47:20
Starting [1] - 16:8
starts [3] - 39:3, 39:14, 71:4
State [1] - 75:18
state [1] - 3:6
statement [3] - 8:9, 46:16, 65:7
statements [4] - 46:15, 65:2, 68:12, 69:2
states [1] - 66:5
STATES [2] - 1:1, 1:3
States [6] - 1:12, 1:15, 3:2, 4:17, 23:23, 73:20
stature [1] - 19:18
status [1] - 76:2
statute [3] - 19:5, 21:9, 21:16

Stenographically [1] - 2:16
step [3] - 35:18, 51:3, 51:12
still [4] - 8:15, 36:19, 40:20, 42:2
stood [1] - 37:20
stop [1] - 41:13
stops [2] - 39:3, 39:14
straightforward [2] - 16:24, 46:4
strange [1] - 53:6
Street [2] - 2:1, 2:5
streets [1] - 48:16
stricken [1] - 15:3
strictly [1] - 65:18
strike [1] - 56:12
strong [3] - 40:12, 43:25, 51:7
stronger [1] - 31:23
strongly [1] - 35:21
struck [1] - 42:9
structure [1] - 20:3
stuff [1] - 45:22
subject [2] - 8:6, 74:24
submission [1] - 50:3
submissions [1] - 51:14
submit [3] - 6:18, 7:10, 8:2
submitted [3] - 5:14, 41:18, 42:18
substance [1] - 40:1
substantive [1] - 22:1, 22:5, 30:3, 30:8, 31:15, 32:19, 32:20, 33:13, 34:3, 39:10
substitute [1] - 8:15
successful [1] - 56:5
suffer [3] - 58:17, 60:2, 60:12
sufficiency [2] - 16:12, 16:14
sufficient [10] - 17:12, 26:7, 26:15, 29:14, 29:21, 41:12, 51:6, 51:21, 56:10
sufficiently [3] - 13:2, 30:10, 51:6, 51:7
suggest [7] - 14:16, 37:18, 50:18, 57:5, 63:11, 69:12, 73:2
suggested [2] - 51:1, 60:20
suggestion [4] - 9:21, 60:18, 69:15, 74:21
suggests [2] - 26:19, 50:22
suitable [1] - 8:15
Suite [2] - 1:21, 2:2
sum [1] - 40:1
summarize [2] - 10:24, 11:7
summation [1] - 46:3
supplied [1] - 74:15
supply [1] - 72:4
support [2] - 7:18, 23:12
supports [1] - 32:18
suppose [1] - 5:3
supposed [1] - 10:14
Supreme [1] - 75:18
surfaced [2] - 36:21, 36:22
surprisingly [1] - 43:1
Susan [1] - 4:12
SUSAN [1] - 2:9
suspects [1] - 48:18

**suspicion** [1] - 63:10
**sustained** [1] - 8:4
**sweat** [1] - 36:18
**sworn** [1] - 67:3

## T

**tailored** [1] - 19:24
**tampering** [6] - 51:19, 53:14, 56:25, 60:24, 62:4, 63:3
**tape** [2] - 48:17, 48:22
**tapes** [5] - 48:3, 48:6, 48:10, 48:13, 64:1
**target** [1] - 44:18
**Taryn** [1] - 3:8
**TARYN** [1] - 1:17
**ten** [1] - 52:25
**ten-week** [1] - 52:25
**tend** [1] - 50:2
**tenets** [1] - 34:23
**tenuous** [2] - 23:16, 34:7
**term** [1] - 28:23
**test** [4] - 21:14, 21:22, 32:5, 70:24
**testified** [1] - 40:17
**testify** [2] - 37:24, 67:3
**testifying** [4] - 38:2, 38:17, 65:13, 66:15
**testimony** [10] - 8:20, 8:23, 9:8, 9:11, 20:2, 24:10, 39:17, 66:4, 66:20, 67:7
**tests** [2] - 70:24, 71:2
**THE** [131] - 3:2, 3:5, 3:6, 3:12, 3:14, 3:18, 3:21, 3:25, 4:3, 4:7, 4:10, 4:13, 4:23, 5:8, 5:13, 5:16, 5:20, 8:7, 9:17, 10:1, 10:4, 10:9, 10:13, 10:16, 10:21, 10:25, 11:4, 11:18, 12:10, 14:21, 15:14, 15:24, 16:3, 16:7, 16:16, 16:23, 17:14, 17:22, 18:1, 20:9, 20:18, 20:21, 20:24, 21:4, 21:7, 21:9, 24:14, 24:17, 24:23, 25:2, 25:8, 27:2, 27:8, 28:16, 28:18, 28:21, 31:6, 31:12, 31:23, 32:22, 32:25, 33:2, 33:5, 34:17, 34:21, 35:1, 35:3, 38:9, 45:25, 47:15, 48:1, 49:9, 49:11, 49:18, 49:21, 49:23, 52:3, 52:5, 54:8, 55:13, 55:15, 57:6, 57:25, 58:12, 61:22, 62:15, 62:20, 63:5, 63:17, 64:6, 64:11, 64:13, 64:15, 64:17, 64:21, 65:3, 65:9, 67:21, 68:8, 68:13, 68:19, 69:7, 69:11, 69:17, 69:20, 70:1, 70:4, 70:7, 70:9, 70:17, 71:9, 71:11, 71:14, 71:18, 71:21, 72:8, 72:13, 73:2, 73:9, 73:23, 74:2, 74:7, 74:11, 75:2, 75:9, 75:11, 75:15, 75:19, 75:22, 75:24, 76:1
**themselves** [1] - 18:18
**theoretical** [1] - 9:14
**theories** [1] - 45:7
**theory** [6] - 6:20, 7:16, 38:14, 38:15, 63:9, 63:24
**thereby** [1] - 59:20
**therefore** [3] - 48:19, 50:6, 50:8

**thesis** [1] - 23:19
**thin** [1] - 27:8
**thinking** [1] - 68:16
**thinks** [1] - 48:18
**third** [2] - 12:5, 61:1
**thoroughness** [1] - 60:4
**thread** [1] - 26:9
**three** [7] - 21:22, 22:8, 22:9, 32:19, 50:20, 60:14, 66:18
**three-factor** [1] - 50:20
**threshold** [4] - 41:6, 53:10, 53:19, 57:22
**throughout** [2] - 57:19, 58:7
**thrust** [2] - 50:5, 50:7
**Thursday** [1] - 70:14
**tied** [1] - 23:19
**ties** [1] - 55:2
**title** [1] - 19:5
**today** [3] - 35:15, 39:12, 67:16
**together** [4] - 24:21, 25:5, 29:15, 31:21
**TOLKIN** [1] - 2:12
**took** [5] - 16:17, 36:14, 36:23, 50:19
**tool** [1] - 46:10
**top** [1] - 44:19
**touched** [1] - 16:12
**tracks** [1] - 8:5
**transaction** [6] - 22:15, 25:16, 26:1, 26:14, 32:8, 34:14
**transactions** [7] - 22:16, 23:11, 26:15, 26:25, 28:12, 32:9, 34:13
**transcript** [1] - 72:18
**Transcript** [1] - 2:16
**Transcription** [1] - 2:16
**transcripts** [4] - 8:13, 9:5, 9:8, 72:2
**transform** [1] - 26:13
**transported** [1] - 52:18
**transporting** [2] - 53:4, 58:6
**tremendous** [1] - 73:14
**trend** [1] - 51:2
**trial** [42] - 6:6, 8:16, 8:20, 9:9, 12:22, 17:20, 19:16, 20:15, 24:6, 25:4, 25:11, 27:18, 27:23, 39:6, 43:24, 44:2, 52:25, 53:2, 53:15, 54:2, 56:7, 57:19, 58:7, 60:19, 62:8, 62:12, 63:2, 65:4, 66:3, 66:18, 67:4, 69:1, 69:4, 69:21, 70:17, 71:4, 71:18, 72:11, 73:12, 76:4
**trials** [6] - 6:15, 7:15, 16:2, 20:1, 24:4, 65:11
**tried** [6] - 24:24, 27:25, 50:17, 63:8, 63:14, 63:18
**troubled** [1] - 42:5
**trusted** [2] - 7:3, 7:4
**truth** [3] - 44:5, 61:15, 61:20
**try** [5] - 4:20, 36:23, 44:14, 69:10, 71:16
**trying** [2] - 18:7, 27:9
**Tuesday** [1] - 76:1
**turn** [2] - 15:17, 20:19
**Turning** [1] - 19:21

**turns** [1] - 53:3
**twice** [1] - 24:24
**Two** [2] - 22:9, 33:25
**two** [14] - 5:25, 6:15, 7:15, 11:10, 12:13, 21:24, 26:9, 27:10, 57:16, 65:11, 67:16, 68:15, 70:12, 73:15
**Ty** [1] - 17:6
**type** [1] - 42:10
**typically** [2] - 14:13, 21:25

## U

**U.S** [4] - 1:4, 1:18, 43:5, 66:14
**umbrella** [1] - 31:18
**Unbeknownst** [1] - 54:21
**under** [21] - 6:21, 8:14, 15:25, 17:13, 19:6, 21:2, 21:14, 24:2, 25:22, 31:6, 31:17, 34:4, 36:25, 37:4, 37:6, 37:12, 37:22, 42:19, 43:22, 44:25, 55:2
**Under** [1] - 21:16
**undercover** [1] - 65:24
**underlying** [5] - 23:19, 34:4, 45:4, 50:7, 51:4
**undertaken** [1] - 59:15
**undue** [1] - 19:4
**unduly** [1] - 43:19
**unequivocally** [1] - 61:16
**unfortunately** [1] - 50:2
**unit** [1] - 70:25
**Unit** [1] - 43:10
**UNITED** [2] - 1:1, 1:3
**United** [6] - 1:12, 1:15, 3:2, 4:17, 23:23, 73:20
**unless** [2] - 19:21, 34:20
**Unless** [1] - 47:13
**unlikely** [1] - 59:8
**Unquestionably** [1] - 59:13
**unquote** [1] - 52:21
**unrelated** [1] - 23:10
**untenable** [1] - 37:15
**unusual** [1] - 21:24
**up** [10] - 5:21, 5:24, 26:2, 35:6, 38:17, 42:5, 43:14, 56:10, 73:17, 73:21
**uphill** [1] - 51:2
**upper** [1] - 70:24
**urge** [2] - 28:15, 58:6
**useful** [1] - 66:3

## V

**value** [1] - 40:24
**various** [6] - 15:9, 20:5, 26:6, 27:20, 50:18, 54:15
**vehicle** [1] - 38:19
**vendetta** [2] - 7:6, 14:2
**vendettas** [2] - 13:15, 16:18
**venire** [1] - 54:11
**verbally** [1] - 66:7

**verdict** [2] - 65:21, 67:10
**versus** [1] - 23:23
**vertical** [1] - 13:3
**vertically** [1] - 17:13
**victim** [1] - 55:3
**view** [3] - 38:19, 60:13, 66:8
**Vinnie** [2] - 39:25, 47:10
**violation** [1] - 23:9
**violence** [5] - 7:8, 13:14, 18:20, 22:11
**virtually** [1] - 58:9
**virtue** [1] - 60:15
**visually** [1] - 66:7
**vitally** [1] - 40:6
**voir** [1] - 55:16
**vouched** [1] - 40:16
**vouching** [1] - 40:24

## W

**wait** [2] - 43:24, 64:20
**Wallach** [2] - 37:22, 43:22
**wants** [3] - 38:12, 46:12, 48:14
**war** [1] - 73:17
**warden** [1] - 71:15
**warrant** [2] - 12:4, 12:6
**wasting** [2] - 9:13, 71:23
**ways** [2] - 55:15, 56:14
**weakens** [1] - 53:18
**weapon** [1] - 22:10
**week** [5] - 52:25, 54:2, 69:23, 75:8
**weeks** [10] - 65:2, 65:5, 65:11, 67:16, 68:11, 68:15, 70:8, 70:9, 70:12, 70:13
**welcome** [1] - 73:9
**West** [1] - 2:5
**wherein** [1] - 54:10
**whichever** [1] - 50:25
**whole** [8] - 23:19, 40:20, 45:4, 45:5, 45:10, 45:17, 49:7, 58:25
**WI-1** [1] - 42:1
**WI-2** [1] - 42:2
**willingness** [2] - 44:23, 51:19
**wind** [2] - 26:2, 58:22
**wins** [1] - 34:24
**wish** [2] - 25:11, 68:6
**wishes** [1] - 54:4
**Wit** [1] - 43:10
**withdrawn** [2] - 20:14, 54:19
**witness** [20] - 8:11, 36:19, 37:24, 38:2, 38:7, 38:17, 39:2, 39:11, 40:16, 40:22, 41:1, 43:14, 43:17, 44:1, 44:16, 61:15, 66:25, 67:1, 67:3, 67:7
**witnesses** [14] - 41:16, 42:1, 42:24, 43:8, 43:18, 65:6, 65:14, 65:24, 65:25, 66:16, 66:17, 66:19, 66:21, 67:7
**witnesses's** [1] - 66:4
**wondering** [1] - 32:25
**word** [2] - 34:25, 40:9
**words** [5] - 10:16, 25:2, 31:11, 35:15, 39:24

**wordy** [2] - 50:2, 52:1
**works** [2] - 54:19, 54:20
**worried** [1] - 48:19
**worth** [1] - 46:14
**writes** [1] - 59:11
**written** [5] - 40:24, 42:23, 50:3, 50:11, 50:13
**wrote** [3] - 26:8, 42:14, 59:9

## Y

**yahoo** [1] - 64:2
**year** [2] - 35:19, 41:11
**years** [1] - 60:20
**YORK** [1] - 1:1
**York** [7] - 1:5, 1:16, 2:6, 2:10, 2:14, 75:18
**yourselves** [1] - 4:24

## Z

**Zelda** [1] - 1:21